Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
  A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501      Fax (323) 937-4503
e-mail: baruchcohen@baruchcohenesq.com

Charles Shamash, Esq. (SBN 178110)
**CACERES & SHAMASH, LLP**
9701 Wilshire Boulevard, 10th Floor
Beverly Hills, CA  90212
(310) 205-3400      Fax: (310) 878-8308
e-mail:  cs@locs.com

*Attorneys For Plaintiffs, Matt Capelouto and Christine Capelouto*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69,",<br><br>Debtor<br><br>―――――――――――<br><br>MATT CAPELOUTO AND CHRISTINE CAPELOUTO,<br><br>Plaintiffs<br><br>vs.<br><br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69,"<br><br>Defendant | Case No.  6:22-bk-14752-MH<br><br>Assigned to the Honorable Mark D. Houle<br><br>Chapter 7<br><br>**COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(6) & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)** |

**TO THE HONORABLE JUDGE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE::**

Matt & Christine Capelouto ("Capelouto") by and through their respective counsel, complain and allege as follows:

5/11-8:28pm

## CORE/NON-CORE DESIGNATION

1. In accordance with Local Bankruptcy Rule 7008-1, Capelouto alleges that this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Capelouto acknowledges that the Court has the power to enter final orders and judgments in this matter. The Capelouto's also consents to the Court's entry of final orders and judgments in this matter.

## JURISDICTION AND VENUE

2. Defendant and Debtor Brandon Michael McDowell ("Debtor" and/or "McDowell") filed a voluntary chapter 7 petition for relief under Title 11 of the United States Code on 12-21-2022 (the "Petition Date") , Case # 6:22-bk-14752-MH (the "Petition") in the United States Bankruptcy Court, Central District of California, Riverside Division (the "Bankruptcy Court") commencing the instant bankruptcy case. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

3. The venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PARTIES

4. The following is a description of the relevant parties involved in the facts forming the basis of this Complaint.

5. The Capelouto's are the bereaved parents of their 20-year old daughter Alexandra Capelouto ("Alexandra").

6. The Capelouto's are informed and believe that McDowell is a 23-year old individual residing in Los Angeles, California, currently incarcerated in prison at FCI Terminal Island, 1299 Seaside Avenue, San Pedro, California 90731, prisoner # 79243-509. McDowell is represented by Summer M Shaw of Shaw & Hanover, PC.

## GENERAL ALLEGATIONS

7. The following general allegations form the background for the Capelouto's claims for relief against McDowell.

8. The Capelouto's are informed and believe that on or about 12-22-2019, McDowell resided and operated a business out of 11434 Millard Dr., Riverside, California 92503 comprised

1  of manufacturing, distribution, and sales of narcotics including, but not limited to
2  oxycontin and fentanyl.

3   9.  The Capelouto's are informed and believe that on or about 12-22-2019, McDowell was
4   contacted via Snapchat by Alexandra, who inquired about purchasing Percocet pills, a
5   prescription painkiller.

6  10. The Capelouto's are informed and believe that McDowell agreed to sell Alexandra
7   Percocet/Oxycontin pills.

8  11. The Capelouto's are informed and believe that McDowell sold 11 pills to Alexandra that
9   he represented to be the pure Percocet/Oxycontin Alexandra requested, that he later
10  described to law enforcement as blue "Oxys" or "M30s." However, the pills were not pure
11  Percocet/Oxycontin. Each pill actually contained a lethal dose of fentanyl.[1]

12 12. The Capelouto's are informed and believe that the pills were manufactured using fentanyl
13  as either a filler or total replacement for Percocet/Oxycontin in order to defraud purchasers
14  and create a higher profit margin for the seller, distributor, and manufacturer of the pills.
15  They were manufactured to look identical to pure oxycontin pills so that the alterations
16  were undetectable by the purchaser or user.

17 13. The Capelouto's are informed and believe that McDowell knew that it was illegal for him

---

[1] According to the CDC, there were 70,601 overdose deaths involving synthetic opioids other than methadone (primarily fentanyl) in the United States in 2021. This represents a 23.3% increase from the previous year. Fentanyl is a powerful synthetic opioid that is 50 to 100 times more potent than morphine. It is often mixed with other drugs, such as heroin, cocaine, and methamphetamine, and can be deadly even in small doses. Fentanyl works by binding to opioid receptors in the brain and spinal cord. This binding slows down the body's respiratory system, which can lead to respiratory arrest and death. Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using. See, e.g. *United States v. Harris*, 774 Fed. Appx. 937, 941 (6th Cir. 2019) (quoting the Sentencing Commission's finding. The rise in fentanyl-related deaths is a major public health crisis in the United States. Here is the national death toll for deaths by fentanyl for the years 2019-2023:

| Year | Number of deaths |
|------|------------------|
| 2019 | 50,100 |
| 2020 | 69,710 |
| 2021 | 70,601 |
| 2022 | 106,699 (provisional) |
| 2023 | 110,000 (estimated) |

5/11-8:28pm

-3-

|   |     |   |
|---|---|---|
| | | to sell the pills (to Alexandra) and that they contained fentanyl or some other federally controlled substance. |
| | 14. | The Capelouto's are informed and believe that prior to 12-22-2029, McDowell knew that ingestion of Fentanyl was dangerous. |
| | 15. | The Capelouto's are informed and believe that prior to 12-22-2029, McDowell knew that ingestion of Fentanyl could cause death in humans. |
| | 16. | The Capelouto's are informed and believe that on 12-22-20219, McDowell knew that ingestion of Fentanyl could cause death to Alexandra. |
| | 17. | The Capelouto's are informed and believe that on 12-22-20219, McDowell had not taken any steps to mitigate the risk of harm, such as providing warnings to Alexandra about the dangers of Fentanyl. In fact, it is much worse, as McDowell lied to Alexandra that the pills were Percocet/Oxycontin and withheld the truth from her that the pills were Fentanyl. |
| | 18. | The Capelouto's are informed and believe that upon going to bed the night of 12-22-2019, Alexandra ingested half of one of the pills. The Fentanyl entered her system, poisoning her body, and caused her death. |
| | 19. | The Capelouto's are informed and believe that McDowell intentionally, misrepresented the content of the pills he sold to Alexandra such that she was not able to manage the quantity and nature of material she was about to ingest. That same evening, Alexandra did, in fact, consume one or more of the pills she purchased from McDowell. |
| | 20. | The Capelouto's are informed and believe that the following day, on or about 12-23-2019, Alexandra was found unresponsive by her parents. She was ultimately pronounced dead with the cause of death being a lethal dose of fentanyl, traced to the pills she purchased from McDowell on or about 12-22-2019. |
| | 21. | In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69," # ED CR 21-238-JGB, on 7-11-2022, McDowell signed a *Plea Agreement*, with the United States Attorney's Office for the Central District of California, where he pled guilty of the crime of Possession with Intent to Distribute Fentanyl, in violation of 21 USC §§ |

1     841(a)(1)(b)(1)(c) [Doc-32].[2]

22. McDowell's *Plea Agreement* admitted that he: (1) knowingly and intentionally possessed fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by overdose. McDowell also acknowledged that he will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.

23. McDowell's *Plea Agreement*, agreed that: any statements made by him, under oath, at the guilty plea hearing, and evidence derived from such statements, shall be admissible against him in any such action against him, and he waived and gave up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

24. On 11-30-2022, the Capeloutos sued McDowell in the Superior Court of the State of California, Riverside County, # CVSW219985 (the "State Court Case"), pursuant to the Drug Dealer Liability Act "DDLA" codified as Health and Safety Code sections 11700, et seq, for the wrongful death of Alexandra, who on 12-22-2019, McDowell illegally sold Percocet and/or Oxycontin pills (blue "Oxys" or "M30s") containing lethal doses of fentanyl, which caused her death.

25. The Capelouto's are informed and believe that McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, were intentional, done without just cause or excuse, wilful and malicious, and was done with the specific intent to cause serious harm and injury to Alexandra, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions.

---

[2] 21 USC §§ 841(a)(1)(b)(1)(C) provides that any person who knowingly or intentionally distributes, or possesses with intent to distribute, a Schedule III, IV, or V controlled substance, as defined in the Controlled Substances Act, shall be punished by imprisonment for up to five years, a fine, or both.

26. The Capelouto's are informed and believe that the conduct of McDowell did in fact, directly and proximately, cause Alexandra serious mental and physical distress, which resulted in her untimely death.

27. The Capelouto's are informed and believe that as a legal, direct and proximate result of the conduct of McDowell, Alexandra and her parents suffered damages. Per the *Statement of Damages* filed in the State Court Case (the "Statement of Damages"), in the amount is $5,000,000.00.

28. The Capeloutos have gone through enough hell as a result of McDowell's illegal actions. They must now live a painful life of bereavement without their daughter. To quote Matt Capelouto's gut-wrenching *Victim Impact Statement*:

*Alex's murder has taken even more from us.*

*Losing her child - the strain and unbearable stress that was put upon my beautiful wife by the defendant and his greed ...*

*Look, we all know, there's no greater pain than having a child stolen from you - it puts a weight and strain on a soul that can't be measured.*

*But I believe all this pain and despair is the cause of my wife's cancer, which is literally killing her as I stand here and talk with you.*

*With no history of cancer in her family, this deadly disease creeped into our family's lives - just like this murderer did - and eventually, it will take her away from me as well.*

*And we will be the ones struggling to survive the chaotic, debilitating waves of destruction that he's left in his wake.*

*Stand beside us in our grief. Feel what we are feeling.  Absorb a tiny piece of the pain we are enduring. A pain that is - to this day - ripping people I love more than anything away from me.*

**FIRST CLAIM FOR RELIEF**
(*For Determination that McDowell's Debt to the Capeloutos is NonDischargeable Under 11 USC § 523(a)(6)*)

29. The Capelouto's incorporate by reference and reallege each of the allegations set forth in paragraphs 1 through 28 as though set forth in full.

30. 11 USC § 523(a)(6), provides that a debt that arises from willful and malicious injury by the debtor to another entity or to the property of another entity in nondischargeable.

5/11-8:28pm

31. The Capelouto's are informed and believe that McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, was intentional, done without just cause or excuse, wilful and malicious, and was done with the specific intent to cause serious harm and injury to Alexandra, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions.

32. McDowell's Plea Agreement admitted that he: (1) knowingly and intentionally possessed fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by overdose.

33. The Capelouto's are entitled to a judgment that the damages from the wrongful death of their daughter Alexandra are deemed to be nondischargeable under 11 USC § 523(a)(6).

**SECOND CLAIM FOR RELIEF**
(*For Denial of McDowell's Discharge Under 11 USC § 727(a)*)

34. The Capelouto's incorporate by reference and reallege each of the allegations set forth in paragraphs 1 through 33 as though set forth in full.

35. 11 USC § 727(a)(4)(A), provides that a Debtor will be denied a discharge if he knowingly and fraudulently made a false oath or account regarding the Bankruptcy.

36. McDowell's Statement of Financial Information # 4 lists no income during 2022, and for the two previous calendar years 2021, and 2020 (the Petition Date was 12-21-2022).

37. The Capelouto's are informed and believe that McDowell earned substantial income selling drugs during this period of time with virtually no expenses since he lived at home with his parents, and therefore lied in his bankruptcy, and his discharge be denied.

38. McDowell's Schedule H lists no Co-Debtors, omitting his parents Justin Lee McDowell and Jill McCarthy who are co-defendants in the Capelouto's state court lawsuit.

39. The Capelouto's are entitled to a judgment that McDowell'sdischarge be denied under 11 USC § 727(a).

**PRAYER FOR RELIEF**

**WHEREFORE**, the Capelouto's pray for Judgment against McDowell as follows:

1. That McDowell is indebted to the Capelouto's for actual damages in an amount not less than $5,000,000.00;

2. That McDowell is indebted to the Capelouto's for attorneys' fees, expenses, and other costs and charges of collection accrued after the entry of judgment until their claim is paid in full;

3. That the debt McDowell owes to the Capelouto's, and any and all other claims, debts and damages proven at trial, arising from or relating to the allegations herein are determined to be not dischargeable pursuant to 11 USC § 523(a)(6).

4. That McDowell be denied a discharge pursuant to 11 USC § 727(a)(4)(A);

5. For costs of suit; and

6. For such other and further relief as the Court deems proper.

DATED:    May 11, 2023

LAW OFFICE OF BARUCH C. COHEN
A Professional Law Corporation

By /s/ Baruch C. Cohen
Baruch C. Cohen, Esq.
*Attorneys For Plaintiffs, Matt Capelouto and Christine Capelouto*

5/11-8:28pm

-8-

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>MATT CAPELOUTO AND CHRISTINE CAPELOUTO | **DEFENDANTS**<br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69" |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Baruch C. Cohen, Esq. (SBN 159455)    (323) 937-4501<br>LAW OFFICE OF BARUCH C. COHEN, A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(6) & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 5,000,000.00 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||||
|---|---|---|---|---|
| NAME OF DEBTOR<br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69" |||BANKRUPTCY CASE NO.<br>6:22-bk-14752-MH ||
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California |||DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Houle |
| RELATED ADVERSARY PROCEEDING (IF ANY) |||||
| PLAINTIFF || DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISION OFFICE || NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |||||
| DATE<br>5/11/2023 |||PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Baruch C. Cohen, Esq. ||

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.