Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501        Fax (323) 937-4503
e-mail: baruchcohen@baruchcohenesq.com

Charles Shamash, Esq. (SBN 178110)
**CACERES & SHAMASH, LLP**
9701 Wilshire Boulevard, 10th Floor
Beverly Hills, CA 90212
(310) 205-3400       Fax: (310) 878-8308
e-mail:  cs@locs.com

*Attorneys For Plaintiffs, Matt Capelouto and Christine Capelouto*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>BRANDON MICHAEL MCDOWELL,<br>aka "trvpkid_69,",<br><br>Debtor<br><br>————————————————<br><br>MATT CAPELOUTO AND<br>CHRISTINE CAPELOUTO,<br><br>Plaintiffs<br><br>vs.<br><br>BRANDON MICHAEL MCDOWELL,<br>aka "trvpkid_69",<br><br>Defendant. | Case No. 6:22-bk-14752-MH<br><br>Adv. No. 6:23-ap-01041-MH<br><br>Assigned to the Honorable Mark D. Houle<br><br>Chapter 7<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S FIRST CLAIM FOR RELIEF**<br><br>[Fed.R.Bankr.P. 7055, FRCP 55(a) and LBR 7055-1]<br><br>Date: 4-17-2024<br>Time: 2:00pm<br>Place: 3420 Twelfth St., Riverside, CA<br>Courtroom: 301 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs MATT CAPELOUTO AND CHRISTINE CAPELOUTO ("Plaintiffs") hereby submits this *Statement of Uncontroverted Facts in support of their Motion for Summary Judgment of its First Claim for Relief, For Determination that McDowell's Debt to the Capeloutos is*

1/31-11:14am

1 | *NonDischargeable Under 11 USC § 523(a)(6)* ("First Claim for Relief") as against Defendant
2 | BRANDON MICHAEL MCDOWELL, aka "trvpkid_69"("Defendant").[1]

**STATEMENT OF UNCONTROVERTED FACTS**

1. The Capelouto's ("Plaintiffs") are the married couple and the biological parents of decedent, Alexandra ("Alex") Capelouto - who was born February 24, 1999. They are now bereaved parents.

2. In December of 2019, Alex was in her sophomore year Arizona State University, with a major in Sociology. After graduation, her plan was to become a social worker so that she could help others. On December 22, 2019, she was staying at her parent's home for her winter break from school. She was 20 years old.

3. Defendant McDowell is a 23-year old individual residing in Los Angeles, California, currently incarcerated in prison at FCI Terminal Island, 1299 Seaside Avenue, San Pedro, California 90731, Prisoner #79243-509. McDowell was represented by Summer M Shaw of Shaw & Hanover, PC., and is now in pro per.

4. On or about 12-22-2019, McDowell resided and operated a business out of 11434 Millard Dr., Riverside CA 92503 comprised of manufacturing, distribution, and sales of narcotics including, but not limited to oxycontin and fentanyl.

5. On or about 12-22-2019, McDowell was contacted via the social media app Snapchat by Alexandra, who inquired about purchasing Percocet pills, a prescription painkiller.

6. McDowell agreed to sell Alexandra Percocet/Oxycontin pills.

7. McDowell sold 11 pills to Alexandra that he represented to be the pure Percocet/Oxycontin Alexandra requested, that he later described to law enforcement as blue "Oxys" or "M30s." However, the pills were not pure Percocet/Oxycontin. Each pill

---

[1] While initially, Plaintiffs did not believe a Statement of Uncontroverted Facts and Conclusions of Law was required given Defendants' imprisonment, nevertheless, out of a modicum of caution, Plaintiffs are filing same now, as it still gives Defendant ample time to respond for the scheduled hearing.

1/31-11:14am

-2-

actually contained a lethal dose of the deadly opioid fentanyl and were counterfeit pills.[2]

8. The pills were manufactured using fentanyl as either a filler or total replacement for Percocet/Oxycontin in order to defraud purchasers and create a higher profit margin for the seller, distributor, and manufacturer of the pills. They were manufactured to look identical to pure oxycontin pills so that the alterations were undetectable by the purchaser or user.

9. McDowell knew that it was illegal for him to sell the pills (to Alexandra) and that they contained fentanyl or some other federally controlled substance.

10. Prior to 12-22-2019, McDowell knew that ingestion of Fentanyl was dangerous.

11. Prior to 12-22-2019, McDowell knew that ingestion of Fentanyl could cause death in humans.

12. On 12-22-20219, McDowell knew that ingestion of Fentanyl could cause death to Alexandra.

13. On 12-22-2019, McDowell had not taken any steps to mitigate the risk of harm, such as providing warnings to Alexandra about the dangers of Fentanyl. In fact, it is much worse, as McDowell lied to Alexandra that the pills were Percocet/Oxycontin and withheld the truth from her that the pills were Fentanyl.

---

[2] According to the CDC, there were 70,601 overdose deaths involving synthetic opioids other than methadone (primarily fentanyl) in the United States in 2021. This represents a 23.3% increase from the previous year. Fentanyl is a powerful synthetic opioid that is 50 to 100 times more potent than morphine. It is often mixed with other drugs, such as heroin, cocaine, and methamphetamine, and can be deadly even in small doses. Fentanyl works by binding to opioid receptors in the brain and spinal cord. This binding slows down the body's respiratory system, which can lead to respiratory arrest and death. Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using. See, e.g. *United States v. Harris*, 774 Fed. Appx. 937, 941 (6th Cir. 2019) (quoting the Sentencing Commission's finding. The rise in fentanyl-related deaths is a major public health crisis in the United States. Here is the national death toll for deaths by fentanyl for the years 2019-2023:

| Year | Number of deaths |
|---|---|
| 2019 | 50,100 |
| 2020 | 69,710 |
| 2021 | 70,601 |
| 2022 | 106,699 (provisional) |
| 2023 | 110,000 (estimated) |

14. Upon going to bed the night of 12-22-2019, Alexandra ingested half of one of the pills.

15. The Fentanyl entered her system, poisoning her body, and caused her death.

16. McDowell intentionally misrepresented the content of the pills he sold to Alexandra such that she was not able to manage the quantity and nature of material she was about to ingest. That same evening, Alexandra did, in fact, consume one or more of the pills she purchased from McDowell.

17. The following day, on or about 12-23-2019, Alexandra was found unresponsive by her parents. She was ultimately pronounced dead with the cause of death being a lethal dose of fentanyl, traced to the pills she purchased from McDowell on or about 12-22-2019.

18. Alex's father, Matt Capelouto, has since become the preeminent spokesperson for this issue, serves as president of the non-profit druginducedhomicide.org, and has worked tirelessly with legislators attempting to pass Alexandra's Law which would require courts to issue a written admonishment to defendants convicted of a range of fentanyl-related offenses, from possessing for sale to sharing or transporting the drug. This would alert the defendant that selling or giving away drugs could result in death, and that, if they do it again and somebody dies as a result, they could be on the hook for murder.

19. After Alex's death, her mother, plaintiff Christine Capelouto, was diagnosed with stage 4 triple negative breast cancer, which has metastasized to her lungs. She attributes this condition to the depression and stress she has felt since Alex's death.

20. The intentional and despicable acts of Brandon McDowell have utterly destroyed the Capelouto's lives and have taken a tremendous toll on their family.

**FEDERAL ARREST, GUILTY PLEA & INCARCERATION OF MCDOWELL**

21. In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69", #ED CR 21-238-JGB, on 7-11-2022, McDowell signed a *Plea Agreement*, with the United States Attorney's Office for the Central District of California, where he pled guilty of the crime of Possession with Intent to Distribute Fentanyl in violation of 21 USC § 841(a)(1)(b)(1)(c)

1     [Doc-32].[3]

2 22.  McDowell was prosecuted under a federal statute for Possession with Intent to Distribute Fentanyl. On July 1, 2022, McDowell pled guilty to the charges and is now in federal custody serving up to 9 years for Alex's death.

3 23.  McDowell's *Plea Agreement* admitted that he: (1) knowingly and intentionally possessed fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by overdose. McDowell also acknowledged that he will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.

4 24.  McDowell's *Plea Agreement*, agreed that: any statements made by him, under oath, at the guilty plea hearing, and evidence derived from such statements, shall be admissible against him in any such action against him, and he waived and gave up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.[4]

### STATE COURT JUDGMENT

25.  On 11-30-2021, the Capeloutos sued McDowell in the Superior Court of the State of California, Riverside County, #CVSW219985 ("State Court Case"), pursuant to the Drug

---

[3] 21 USC §§ 841(a)(1)(b)(1)(c) provides that any person who knowingly or intentionally distributes, or possesses with intent to distribute, a Schedule III, IV, or V controlled substance, as defined in the Controlled Substances Act, shall be punished by imprisonment for up to five years, a fine, or both.

[4] McDowell's 7-11-2022 *Plea Agreement* In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69" #ED CR 21-238-JGB (attached as Exhibit "**1**" to the Motion for Summary Judgment and incorporated herein by this reference). Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201. Judicial notice may be taken of documents filed and orders or decisions entered in any federal or state court proceeding. *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754-756, n.1 (9th Cir. 2014) (holding that court properly took judicial notice of California state court proceedings); *Lozman v. City of Riviera Beach, Fla*, 713 F.3d 1066, 1075, n.9 (11th Cir. 2013) (holding that court properly took judicial notice of documents from state court action to establish causes of action were identical to those raised in federal court).

|    |     |
|----|-----|
| 1  | Dealer Liability Act "DDLA" codified as Health and Safety Code sections 11700, et seq, |
| 2  | for the wrongful death of Alexandra, who on 12-22-2019, McDowell illegally sold Percocet |
| 3  | and/or Oxycontin pills (blue "Oxys" or "M30s") containing lethal doses of fentanyl, which |
| 4  | caused her death.[5] (Karwin Dec) |
| 5  | 26. The Capeloutos sought $4,000,000 in general damages plus $1,000,000 in punitive damages |
| 6  | - believing that this civil judgment would send a message to other fentanyl peddlers as to |
| 7  | the value of the lives lost by their callous actions and prompt them to give up the trade, |
| 8  | possibly saving other parents from experiencing this heartbreak. (Karwin Dec) |
| 9  | 27. Defendant McDowell was represented by counsel Matthew T. Ward in the State Court Case |
| 10 | from the inception (11-30-2022) until such time as he withdrew as counsel (Ward was |
| 11 | relieved as counsel by court order on 7-24-23). While Ward represented Defendant in the |
| 12 | State Court Action, Ward: (1) stipulated to set aside default 6-2-2022; (2) answered the |
| 13 | Complaint 6-21-2022; (3) posted jury fees 7-18-2022; (4) participated in the Case |
| 14 | Management Statement 7-18-2022 and appeared at the CMC; (5) filed the Notice of Stay |
| 15 | (due to the bankruptcy) 12-23-2022; & (6) filed a Motion to be Relieved as counsel 6-6- |
| 16 | 2023. (Karwin Dec) |
| 17 | 28. On 11-15-2023, Defendant defaulted in the State Court Action. (Karwin Dec) |
| 18 | 29. On 11-19-2023, Plaintiffs filed for Default Judgment, and filed a *Statement of the Case in* |
| 19 | *Support of Request for Entry of Default Judgment*,[6] as well as *Declaration of Matt* |
| 20 | *Capelouto in Support of Request for Entry of Default Judgment*.[7] (Karwin Dec) |

---

[5] Capelouto's State Court Complaint #CVSW219985 (attached as Exhibit "**2**" to the Motion for Summary Judgment and incorporated herein by this reference). Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

[6] Plaintiffs' 11-19-2023 *Statement of the Case in Support of Request for Entry of Default Judgment* (attached as Exhibit "**3**" to the Motion for Summary Judgment and incorporated herein by this reference). Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

[7] Plaintiffs' 11-19-2023 *Declaration of Matt Capelouto in Support of Request for Entry of Default Judgment* (attached as Exhibit "**4**" to the Motion for Summary Judgment and incorporated herein by this reference). Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

30. On 12-19-2023, Plaintiffs obtained a $5,025,735.00 judgment against McDowell, that provided: "*Defendant Brandon Michael McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, was intentional, done without just cause or excuse, wilful and malicious, and was done with the specific intent to cause serious harm and injury to plaintiffs' decedent, Alexandra Capelouto, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions.*"[8] (The "State Court Judgement") (Karwin Dec)

31. Plaintiffs' 2-19-2023 $5,025,735.00 judgment against McDowell was broken down as follows: (1) $4,000,000 in general damages; (2) $1,000,000 in punitive damages; (3) $25,000 for funeral and burial expenses; & (4) $735.00 in litigation costs = $5,025,735.00. (Karwin Dec)

32. To this day, Defendant has not appealed the fraud judgment or tried to set it aside. (Karwin Dec)

## CONCLUSIONS OF LAW

1. Federal Rule of Civil Procedure 56 (incorporated verbatim into Federal Rule of Bankruptcy Procedure 7056) establishes the standard for obtaining summary judgment and/or summary adjudication. Subsection (c) provides that, initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *British Airways Board v. Boeing Co.*, 585 F.2d 949, 951 (9th Cir. 1978). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Rule 56(e) requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, the Court may grant summary judgment or, in the alternative, summarily adjudicate material facts that are without substantial controversy. *Nelson,*

---

[8] The 12-21-2023 State Court Judgment by the Court for $5,025,735.00 against McDowell, (attached as Exhibit "**5**" to the Motion for Summary Judgment and incorporated herein by this reference). Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

-7-

1/31-11:14am

      *Robbins, et al. v. Louisiana Dydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

2. In its First Claim for Relief, Plaintiffs are seeking orders determining that the State Court Judgment is nondischargeable under 11 USC § 523(a)(6). This section prevents a debtor from discharging debts for money obtained by willful and malicious injury.

3. To prevail, Plaintiffs only has to show by a preponderance of the evidence that the State Court Judgment fits within that category. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

4. To satisfy 11 USC § 523(a)(6), Plaintiffs only have to show that Defendant: (1) committed an intentional tort; (2) intended the consequences of his actions; and (3) acted willfully and maliciously. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). "Willful" conduct is that which is deliberate or intentional. *Kawaauhau*, 523 U.S. at 61. Evidence that Defendant believed injury was substantially certain to occur as a result of his conduct is sufficient. *In re Hamilton*, 584 B.R. 310, 319 (9th Cir. BAP 2018). This is a subjective standard. *In re Su*, 290 F.3d 1140, 1145, n.3 (9th Cir. 2002). "Malicious" injury involves a wrongful act, done intentionally, that necessarily causes injury and that is committed without just cause or excuse. In re Thiara, 285 B.R. 420, 427 (9th Cir. BAP 2002).

**THERE ARE NO TRIABLE ISSUES OF FACT**

**AS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF -**

**This Court Is Required To Give Full Faith And Credit To The State Court Fraud Judgment**

5. Federal courts are required to give the same kind of collateral estoppel effect to state court judgments that courts of the state would give, i.e. "full faith and credit." 28 U.S.C. § 1738. As such, to the extent that the State Court Fraud Judgment meets the criteria for collateral estoppel, the Court is required to give it effect. It is undisputed that: (a) collateral estoppel applies in adversary proceedings; and (b) the factual and legal issues decided by state courts are entitled to preclusive effect in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 (1991); *In re Black*, 487 BR 202, 211 (9th Cir. BAP 2013). To determine the preclusive effect of a state court judgment, the Bankruptcy Court will look to state law. *In re Tomkow*, 563 B.R. 716, 722-723 (9th Cir. BAP 2017).

6. As explained in *Henrichs v. Valley View Development*, 474 F.3d 609, 615 (9th Cir. 2007):

> In California, '[r]es judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' *Mycogen v. Monstanto Co.* (2002) 28 Cal.4th 888, 896. For purposes of res judicata, Henrichs' claim for indemnity has been finally determined by a court of competent jurisdiction and we may not revisit it now. *Rice v. Crow* (2000) 81 Cal.App.4th 725, 736. It therefore follows that so long as Plaintiff establishes the requirements for application of collateral estoppel under California law, the Bankruptcy Court is required to give preclusive effect to the State Court Fraud Judgment.[9]

**THERE ARE NO TRIABLE ISSUES OF FACT**

**AS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF -**

**The State Court Fraud Judgment Is Entitled To Preclusive Effect**

7. Under California law, the doctrine of collateral estoppel applies if: (1) The issue sought to be precluded from re-litigation must be identical to the one decided in a former proceeding; (2) The issue was actually litigated in the former proceeding; (3) The issue was necessarily decided in the former proceeding; (4) The judgment in the former proceeding was final and

---

[9] Collateral attack on a state court judgment in a bankruptcy proceeding (or any other federal proceeding) is barred by the Rooker-Feldman Doctrine, which precludes federal courts from exercising jurisdiction over a claim that constitutes a "de facto appeal" from a state court judgment, i.e., where "claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Rueusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-861 (9th Cir. 2008).

The Court in *In Re Lopez*, 367 BR 99, 104 (9th Cir. BAP 2007) explained that the Rooker-Feldman Doctrine applies to cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

While there is a narrow exception to this rule where a party brings affirmative claims to set aside a state court judgment obtained through extrinsic fraud, *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir 2004) (holding that independent suit to set aside state court judgment based on extrinsic fraud does not violate the Rooker-Feldman Doctrine), Defendant has not asserted any affirmative claims in this Action.

|   |   |   |
|---|---|---|
| 1 |   | on the merits; and (5) The party against whom preclusion is sought must be the same, or in |
| 2 |   | privity with, the party to the former proceeding. *In re Lake*, 202 B.R. 751, 757 (9th Cir. |
| 3 |   | BAP 1996); In re Kelly, 182 B.R. 255, 258 (9th Cir. BAP 1995). |
| 4 | 8. | Additionally, Courts may give preclusive effect to a judgment "only if application of |
| 5 |   | preclusion furthers the public policies underlying the doctrine." *Lucido v. Superior Court*, |
| 6 |   | 51 Cal.3d 335, 342-343 (1990). These policies include preservation of the integrity of the |
| 7 |   | judicial system, promotion of judicial economy, and protection of litigants from harassment |
| 8 |   | by vexatious litigation. |
| 9 | 9. | Finally, in the case of a default judgment: (1) the defendant has to have actual knowledge of |
| 10 |   | the litigation; and (2) the state court has to have made findings on the allegations for which |
| 11 |   | preclusion is sought. *In re Cantrell*, 269 B.R. 413, 419 (9th Cir. BAP 2001). However, |
| 12 |   | requirement (2) is deemed waived where the state court implicitly and necessarily decided |
| 13 |   | the issue(s) in question, Id., which is exactly what happened in the State Court Action. As |
| 14 |   | explained more fully below, Plaintiff has satisfied each of these requirements. |

**The State Court Action Involved The Issue Of Defendant's Willful & Malicious Conduct**

|   |   |   |
|---|---|---|
| 16 | 10. | The "identical issue" requirement addresses whether "identical factual allegations" are at |
| 17 |   | stake in the two proceedings. *Lucido*, supra, 51 Cal.3d at 342. Here, whether Defendant |
| 18 |   | engaged in willful & malicious conduct, is the same in both the State Court Action and this |
| 19 |   | case. |

**The Issue Of Defendant's Willful & Malicious Conduct Was Actually Litigated**

|   |   |   |
|---|---|---|
| 21 | 11. | The "actually litigated" prong is satisfied when an issue is properly raised by the pleadings, |
| 22 |   | or otherwise, and is submitted for determination. *In re Moore*, 186 B.R. 962, 971 (N.D. Cal. |
| 23 |   | Bankr. 1995); *In re Zuckerman*, 613 B.R. 707, 715-716 (9th Cir. BAP 2020) (question of |
| 24 |   | debtor's liability was actually litigated in state court when judgment was entered after trial |
| 25 |   | in absentia due to debtor's and counsel's failure to appear). Under California law, a default |
| 26 |   | judgment satisfies the "actually litigated" requirement. *In re Green*, 198 B.R. 564, 566 (9th |
| 27 |   | Cir. BAP 1996); *Four Star Elec., Inc. v. F&H Constr.*, 7 Cal.App.4th 1375, 1380 (1992). |
| 28 |   |   |

As explained more fully above, the issue of Defendant's willful & malicious conduct was litigated for the better part of a year by an attorney acting on his behalf. (Karwin Dec)

### The Issues Surrounding Defendant's Willful & Malicious Conduct Were Necessarily Decided

12. The issues surrounding Defendant's willful & malicious conduct were necessarily decided in the State Court Action & Judgment. See *In re Green*, 198 B.R. at 566 (holding that default judgment conclusively establishes truth of all material allegations in complaint and every fact necessary to uphold judgment). As Plaintiffs demonstrated above, it is clear that: (1) they showed that all of its damages were a direct result of the willful & malicious conduct in their default prove up packet; (2) they only sought punitive damages in connection with their willful & malicious conduct claim. (Karwin Dec)

### The State Court Judgment Was A Final Judgment On The Merits - Willful & Malicious Conduct

13. It is undisputed that the State Court Judgment was a final judgment on the merits as a matter of law. *In re Garcia*, 313 B.R. 307, 311-312 (2004) (holding the default judgments are considered "final judgments on the merits" for purposes of claim preclusion).

### Defendant Is The Party Against Whom Preclusion Is Sought

14. It is undisputed that the party against whom preclusion is sought, Defendant, is the same party against whom the State Court Judgment was entered. (Karwin Dec)

### Defendant Had Actual Notice Of The State Court Action

15. The purpose of the "actual notice" requirement is to make sure the defaulted defendant had a fair opportunity to litigate the issues determined by the default judgment. *In re Harmon*, 250 F.3d 1240, 1247, n. 6 (2001), citing *Williams v. Williams*, 36 Cal.2d 289, 295 (1950) (holding that defendant served by substituted service had actual notice of litigation).

16. Courts uniformly have held that substituted service is "widely regarded as an effective way to give actual notice to a defendant." *Espindola v. Nunez*, 199 Cal.App.3d 1389, 1392-1393 (1988) (holding that "substituted service has been a primary method of service in the

federal courts for over 100 years and is recognized in 43 states other than California…").

17. That is why the cases involving a lack of actual notice typically involve service by publication, which generally is not recognized to give actual notice. *Watts v. Crawford*, 10 Cal.4th 743, 748, n. 5 (1995); *Williams*, supra, 36 Cal.2d at 291 (holding that service by publication failed to provide actual notice, thereby precluding default judgment from having collateral estoppel effect).

18. Here, it is crystal clear from the evidence that Defendant had actual notice - as Defendant appeared through counsel in the State Court Action.

## THE STATE COURT JUDGMENT IS NON-DISCHARGEABLE

19. As explained above, 11 USC § 523(a)(6) prevents a debtor from discharging debts for money obtained by willful and malicious injury. As explained above, the conduct of Defendant, as determined by the superior court in entering the State Court Judgment, fits within each of these categories.

20. First, by defaulting, Defendant is deemed to have conclusively admitted all of the material allegations of the complaint in the State Court Action, including those related to willful and malicious injury.

21. Plaintiffs demonstrated in their default prove up packet that all of their damages were a direct result of the willful and malicious conduct of Defendant. That is why, among other things, the superior court awarded the exact amounts (and types) of damages that Plaintiffs requested in connection with their wrongful death claims, i.e., $4,000,000 in general damages plus $1,000,000 in punitive damages.[10]

22. It is undisputed that Plaintiffs only sought punitive damages in connection with its wrongful death claims.

23. It is clear that the superior court necessarily determined that Defendant intended to willfully and maliciously hurt Alex, which means their punitive damages award is nondischargeable

---

[10] This is particularly evident, given the requirement that punitive damages award bear a proportional relation to the amount of general damages awarded. *Liodas v. Sahadi*, 19 Cal.3d 278, 284 (1977) (punitive damages must bear a reasonable relation to actual damages).

1/31-11:14am    -12-

under 11 U.S.C. § 523(a)(6). *In Re Emmerson*, 2011 WL 3299852 at *6 (9th Cir. BAP 2011) (holding that "punitive damages awards under CC § 3294 'can only properly be made' in response to wrongful acts that would, by definition, also violate 11 U.S.C. sec. 523(a)(6)), citing *Krishnamurthy v. Nimmagadda*, 209 B.R. 714, 721-722 (9th Cir. BAP 1997), aff'd, 125 F.3d 858 (9th Cir. 1997) and *Aubrey v. Thomas*, 111 B.R. 268, 275 (9th Cir. BAP 1990) (noting that California's statutory definition of oppression comports with the construction of "willful and malicious injury" applied by the Ninth Circuit).[11]

24. The above establishes Defendant's debt to Plaintiffs is nondischargeable under 11 U.S.C. § 523(A)(6).

DATED:    January 31, 2024        LAW OFFICE OF BARUCH C. COHEN
                                  A Professional Law Corporation


                                  By  /s/ Baruch C. Cohen
                                  Baruch C. Cohen, Esq.
                                  *Attorneys For Plaintiffs, Matt Capelouto and Christine Capelouto*

---

[11] In *Emmerson*, the Court concluded that "an award of punitive damages, even absent specific findings of malice or oppression or fraud, is entitled to preclusive effect in a nondischargeability action. Id. at *6, citing *In Re Rousssos*, 251 B.R. 86, 94 (9th Cir. BAP 2000), aff'd, 33 Fed. Appx. 365 (9th Cir. 2002) (holding that "[w]e have also affirmed a bankruptcy court's decision to apply collateral estoppel to an award for punitive damages, in a § 523(a)(6) adversary proceeding, even though the state court did not make specific findings on which to predicate the award"); see also *In re Plyam*, 530 B.R. 456, 470 (9th Cir. BAP 2015) (holding that to the extent punitive damages are awarded for fraud or intentional malice, they satisfy the requirements for § 523(a)(6), as does a statement court judgment based on certain intentional torts).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF'S FIRST CLAIM FOR RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/31/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen      bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
US Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov
Robert Whitmore (TR)  rswtrustee@yahoo.com, rwhitmore@ecf.axosfs.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 1/31/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Brandon Michael McDowell
Register No. 79243-509
FCI Terminal Island, Federal Correctional Institution
PO Box 3007
San Pedro CA 90733

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/31/2024,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Personal Service:   Hon. Mark D. Houle, 3420 Twelfth St., Riverside, CA 92501
Via Email:              Robert P. Karwin, Esq., rkarwin@karwinlaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/31/2024 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-3.1.PROOF.SERVICE**