| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C. Cohen, Esq. (SBN 159455)<br>LAW OFFICE OF BARUCH C. COHEN<br>    A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940<br>Los Angeles, California 90010<br>(323) 937-4501    Fax (323) 937-4503<br>baruchcohen@baruchcohenesq.com<br><br>Charles Shamash, Esq. (SBN 178110)<br>CACERES & SHAMASH, LLP<br>9701 Wilshire Boulevard, 10th Floor<br>Beverly Hills, CA  90212<br>(310) 205-3400    Fax: (310) 878-8308<br>cs@locs.com<br><br>☐  *Plaintiff(s) appearing without attorney*<br>☒  *Attorney for Plaintiff(s)* | |

<table>
<tr><td colspan="2" align="center"><b>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION</b></td></tr>
<tr><td>In re:<br><br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69"<br><br><br> Debtor(s). </td><td>CASE NUMBER: 6:22-bk-14752-MH<br><br>ADVERSARY NUMBER: 6:23-ap-01041-MH<br><br>CHAPTER: 7</td></tr>
<tr><td>MATT CAPELOUTO AND CHRISTINE CAPELOUTO<br><br><br> Plaintiff(s), vs. <br>BRANDON MICHAEL MCDOWELL, aka "trvpkid_69"<br><br><br> Defendant(s). </td><td> <b>PLAINTIFF'S AMENDED<br>MOTION FOR DEFAULT JUDGMENT<br>UNDER LBR 7055-1</b> <br>DATE: 9-11-2024<br>TIME: 3:00 pm<br>COURTROOM: 301<br>ADDRESS: 3420 Twelfth Street, Riverside CA</td></tr>
</table>

**TO THE DEFENDANT, DEFENDANT'S ATTORNEY AND OTHER INTERESTED PARTIES:**

1. Name of Defendant(s) against whom default judgment is sought (*specify name*): _____
   Brandon Michael McDowell, aka "trvpkid_69"

2. Plaintiff filed the complaint in the above-captioned proceeding on (*specify date*): 05/11/2023

3. The Summons and Complaint were served on Defendant by    ☐ personal service    ☒ mail service
   on the following date (*specify date*): 05/12/2023

4. A true and correct copy of the completed return of summons form is attached.

---

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5.  The time for filing an answer or other response expired on (*specify date*): 06/12/2023

6.  No answer or other response has been filed or served by Defendant.

7.  The default of Defendant:

    a.  ☐ Has not yet been entered, but is requested

    b.  ☒ Was entered on (*specify date*): 06/15/2023

8.  **A Status Conference:**

    a.  ☒ Is scheduled for (*specify date, time, and place*): 9/11/2024 at 3:00 PM
        Crtrm 301, 3420 Twelfth St., Riverside, CA 92501

    b.  ☐ Was held on (*specify date, time, and place*): _____

    _____

9.  As proof that Plaintiff is entitled to the relief requested in the complaint, Plaintiff:

    a.  ☒ Relies on the complaint and attached documents.

    b.  ☒ Attaches the following documents to establish a *prima facie* case:

        (1) ☒ Declaration of (*specify*): Baruch C. Cohen

        (2) ☒ Declaration of (*specify*): Matt Capelouto

        (3) ☒ Declaration of (*specify*): Robert P. Karwin, Esq.

10. As further support for entry of a default judgment, Plaintiff submits a memorandum of points and authorities (optional).

11. **DECLARATION OF NON-MILITARY STATUS (**Servicemembers Civil Relief Act, 50 U.S.C. chapter 50 (§§ 3901-4043)). The undersigned party or counsel declares under penalty of perjury, with respect to each Defendant against whom a default judgment is sought by this motion:

    a.  ☒ Defendant is not currently in military service. The facts that support this statement are as follows (*see the court's website for information about how to verify non-military status*):

    b.  ☐ Defendant is currently in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the requirements in 50 U.S.C. § 3931(b)(2) to appoint an attorney for the Defendant before entering a judgment*):

    c.  ☐ I am unable to determine whether or not Defendant is in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the bond requirement in 50 U.S.C. § 3931(b)(3)*):

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                                Page 2                                **F 7055-1.2.DEFAULT.JMT.MOTION**

12.  Defaulting party is not an infant or incompetent party.


Plaintiff requests that this court enter a default judgment in favor of Plaintiff.  A copy of the lodged proposed default judgment is attached.


Date:  9/05/2024                                       Respectfully submitted,

                                                      /s/ Baruch C. Cohen
                                                      _____
                                                      Printed name of law firm


                                                      _____
                                                      Signature

                                                      Baruch C. Cohen
                                                      _____
                                                      Name of Attorney for Plaintiff or Plaintiff

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                                Page 3                        **F 7055-1.2.DEFAULT.JMT.MOTION**

**DECLARATION OF BARUCH C. COHEN - IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1**

I, **Baruch C. Cohen**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. I proudly represent plaintiffs Matt & Christine Capelouto in this Adversary Action.

3. This Declaration is in support of the **PLAINTIFFS' AMENDED MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1** filed by my clients Plaintiffs Matt & Christine Capelouto vs. Brandon Michael Mcdowell, aka "trvpkid_69" 6:23-ap-01041-MH.

**BACKGROUND FACTS**

4. The Capelouto's ("Plaintiffs") are the married couple and the biological parents of decedent, Alexandra ("Alex") Capelouto - who was born February 24, 1999. They are now bereaved parents. (Capelueto Dec)

5. In December of 2019, Alex was in her sophomore year Arizona State University, with a major in Sociology. After graduation, her plan was to become a social worker so that she could help others. On __December 22, 2019__, she was staying at her parent's home for her winter break from school. She was 20 years old. (Capelouto Dec)

6. Defendant McDowell is a 25-year old individual residing in Los Angeles, California, currently incarcerated in prison at FCI Terminal Island, 1299 Seaside Avenue, San Pedro, California 90731, prisoner # 79243-509. McDowell was represented by Summer M Shaw of Shaw & Hanover, PC., and is now in pro per.

7. On or about 12-22-2019, McDowell resided and operated a business out of 11434 Millard Dr., Riverside, California 92503 comprised of manufacturing, distribution, and sales of narcotics including, but not limited to oxycontin and fentanyl. (Capelueto Dec)

8. On or about 12-22-2019, McDowell was contacted via the social media app Snapchat by Alexandra, who inquired about purchasing Percocet pills, a prescription painkiller. (Capelueto Dec)

1    9.       McDowell agreed to sell Alexandra Percocet/Oxycontin pills. (Capelueto Dec)

2    10.      McDowell sold 11 pills to Alexandra that he represented to be the pure Percocet/Oxycontin

3            Alexandra requested, that he later described to law enforcement as blue "Oxys" or "M30s."

4            However, the pills were not pure Percocet/Oxycontin. Each pill actually contained a lethal

5            dose of the deadly opioid fentany and were counterfeit pillsl.[1] (Capelueto Dec)

6    11.      The pills were manufactured using fentanyl as either a filler or total replacement for

7            Percocet/Oxycontin in order to defraud purchasers and create a higher profit margin for the

8            seller, distributor, and manufacturer of the pills. They were manufactured to look identical to

9            pure oxycontin pills so that the alterations were undetectable by the purchaser or user.

10           (Capelueto Dec)

11    12.     McDowell knew that it was illegal for him to sell the pills (to Alexandra) and that they

12           contained fentanyl or some other federally controlled substance. See, McDowell's *Plea*

13           *Agreement.*

14    13.     Prior to 12-22-2019, McDowell knew that ingestion of Fentanyl was dangerous. See,

15           McDowell's *Plea Agreement.*

16    14.     Prior to 12-22-2019, McDowell knew that ingestion of Fentanyl could cause death in humans.

17           See, McDowell's *Plea Agreement.*

18    _____

19        [1] According to the CDC, there were 70,601 overdose deaths involving synthetic opioids other
     than methadone (primarily fentanyl) in the United States in 2021. This represents a 23.3% increase
20    from the previous year. Fentanyl is a powerful synthetic opioid that is 50 to 100 times more potent
     than morphine. It is often mixed with other drugs, such as heroin, cocaine, and methamphetamine,
21    and can be deadly even in small doses. Fentanyl works by binding to opioid receptors in the brain and
     spinal cord. This binding slows down the body's respiratory system, which can lead to respiratory
22    arrest and death. Because of fentanyl's extreme potency, the risk of overdose death is great,
23    particularly when the user is inexperienced or unaware of what substance he or she is using. See, e.g.
     *United States v. Harris*, 774 Fed. Appx. 937, 941 (6th Cir. 2019) (quoting the Sentencing
24    Commission's finding. The rise in fentanyl-related deaths is a major public health crisis in the United
     States. Here is the national death toll for deaths by fentanyl for the years 2019-2023:

25        | Year | Number of deaths |
     | --- | --- |
26    | 2019 | 50,100 |
     | 2020 | 69,710 |
27    | 2021 | 70,601 |
     | 2022 | 106,699 (provisional) |
28    | 2023 | 110,000 (estimated) |

9/5-1:52pm                                              2

15. On 12-22-20219, McDowell knew that ingestion of Fentanyl could cause death to Alexandra. See, McDowell's *Plea Agreement*.

16. On 12-22-2019, McDowell had not taken any steps to mitigate the risk of harm, such as providing warnings to Alexandra about the dangers of Fentanyl. In fact, it is much worse, as McDowell lied to Alexandra that the pills were Percocet/Oxycontin and withheld the truth from her that the pills were Fentanyl. See, McDowell's *Plea Agreement.*

17. Upon going to bed the night of 12-22-2019, Alexandra ingested half of one of the pills. The Fentanyl entered her system, poisoning her body, and caused her death. (Capelueto Dec)

18. McDowell intentionally, misrepresented the content of the pills he sold to Alexandra such that she was not able to manage the quantity and nature of material she was about to ingest. That same evening, Alexandra did, in fact, consume half of the pill she purchased from McDowell. See, McDowell's *Plea Agreement.*

19. The following day, on or about **12-23-2019**, Alexandra was found unresponsive by her parents. She was ultimately pronounced dead with the cause of death being a lethal dose of fentanyl, traced to the pills she purchased from McDowell on or about **12-22-2019**. (Capelueto Dec)

20. Alex's father, Matt Capelouto, has since become the preeminent spokesperson for this issue, serves as president of the non-profit stopdrughomicide.org, and has worked tirelessly with legislators attempting to pass Alexandra's Law which would require courts to issue a written admonishment to defendants convicted of a range of fentanyl-related offenses, from possessing for sale to sharing or transporting the drug. This would alert the defendant that selling or giving away drugs could result in death, and that, if they do it again and somebody dies as a result, they could be on the hook for murder. (Capelueto Dec)

21. After Alex's death, her mother, plaintiff Christine Capelouto, was diagnosed with stage 4 triple negative breast cancer, which has metastasized to her lungs. Her doctors attribute this condition to the depression and stress she has felt since Alex's death. (Capelouto Dec)

22. The ***intentional*** and despicable acts of Brandon McDowell have utterly destroyed the Capelouto's lives and have taken a tremendous toll on their family.

**FEDERAL ARREST, GUILTY PLEA & INCARCERATION OF MCDOWELL**

23.    In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69," #ED CR 21-238-JGB, on **7-11-2022**, McDowell signed a *Plea Agreement*, with the United States Attorney's Office for the Central District of California, where he pled guilty of the crime of Possession with Intent to Distribute Fentanyl, in violation of 21 USC §§ 841(a)(1)(b)(1)© [Doc-32].[2] See, McDowell's *Plea Agreement.*

24.    McDowell was prosecuted under a federal statute for Possession with Intent to Distribute Fentanyl. On July 1, 2022, McDowell pled guilty to the charges and is now in federal custody serving up to 9 years for Alex's death. See, McDowell's *Plea Agreement.*

25.    McDowell's *Plea Agreement* admitted that he: (1) knowingly and intentionally possessed fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by poisoning. McDowell also acknowledged that he will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. See, McDowell's *Plea Agreement.*

26.    McDowell's *Plea Agreement*, agreed that: any statements made by him, under oath, at the guilty plea hearing, and evidence derived from such statements, shall be admissible against him in any such action against him, and he waived and gave up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.[3] See,

---

[2] 21 USC §§ 841(a)(1)(b)(1)(C) provides that any person who knowingly or intentionally distributes, or possesses with intent to distribute, a Schedule III, IV, or V controlled substance, as defined in the Controlled Substances Act, shall be punished by imprisonment for up to five years, a fine, or both.

[3] A true and correct copy of McDowell's 7-11-2022 *Plea Agreement* In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69," # ED CR 21-238-JGB is attached hereto as Exhibit "**1**" and incorporated herein by this reference. Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201. Judicial notice may be taken of documents filed and orders or decisions entered in any federal or state court proceeding. *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754-756, n.1 (9th Cir. 2014) (holding that court properly took judicial notice of California state court proceedings); *Lozman v. City of Riviera Beach, Fla*, 713 F.3d

1    McDowell's *Plea Agreement.*

2                            **THE STATE COURT CASE**

3    27.    On **11-30-2021**, the Capeloutos sued McDowell in the Superior Court of the State of

4           California, Riverside County, # CVSW219985 (the "State Court Case"), pursuant to the Drug

5           Dealer Liability Act "DDLA" codified as Health and Safety Code sections 11700, et seq, for

6           the wrongful death of Alexandra, who on 12-22-2019, McDowell illegally sold Percocet

7           and/or Oxycontin pills (blue "Oxys" or "M30s") containing lethal doses of fentanyl, which

8           caused her death.[4] (Karwin Dec)

9    28.    The Capeloutos sought $4,000,000 in general damages plus $1,000,000 in punitive damages -

10          believing that this civil judgment would send a message to other fentanyl peddlers as to the

11          value of the lives lost by their callous actions and prompt them to give up the trade, possibly

12          saving other parents from experiencing this heartbreak. . (Karwin Dec)

13   29.    Defendant McDowell was represented by counsel Matthew T. Ward in the State Court Case

14          from the inception (11-30-2022) until such time as he withdrew as counsel (Ward was

15          relieved as counsel by court order on 7-24-23). While Ward represented Defendant in the

16          State Court Action, Ward: (1) stipulated to set aside default 6-2-2022; (2) answered the

17          Complaint 6-21-2022; (3) posted jury fees 7-18-2022; (4) participated in the Case

18          Management Statement 7-18-2022 and appeared at the CMC; (5) filed the Notice of Stay (due

19          to the bankruptcy) 12-23-2022; & (6) filed a Motion to be Relieved as counsel 6-6-2023.

20          (Karwin Dec)

21          **THE STATE COURT CASE GETS STAYED TEMPORARILY BY THE DEBTOR'S**
            **CHAPTER 7 BANKRUPTCY**
22
23   30.    On **12-21-2022**, Mcdowell filed a *Chapter 7 Voluntary Petition* Case # 6:22-bk-14752-MH

24          [Main Case Doc-1]

25   _____

26   1066, 1075, n.9 (11th Cir. 2013) (holding that court properly took judicial notice of documents from
     state court action to establish causes of action were identical to those raised in federal court.)

27          [4] A true and correct copy of the Capelouto's *State Court Complaint* # CVSW219985 is
     attached hereto as Exhibit "**2**" and incorporated herein by this reference. Plaintiffs request Judicial
28   Notice of same per Federal Rule of Evidence 201.

31.   On **1-24-2023**, Matt & Christine Capeluoto filed a *Motion for Relief from Automatic Stay - Action in Non-bankruptcy Forum*, to allow the State Court Case to continue [Main Doc-11]. The hearing was set for 2-14-2023 at 11:00 AM [Main Case Doc-15].

32.   On **2-15-2023**, the Court entered its *Order Granting the Capeluoto's Motion for Relief from Automatic Stay Action in Non-bankruptcy Forum* [Main Case Doc-14]

**RESUMPTION OF THE STATE COURT CASE LEADING TO JUDGMENT**

33.   On **11-15-2023**, Defendant defaulted in the State Court Action. (Karwin Dec)

34.   On **11-19-2023**, Plaintiffs filed for *Default Judgment*, and filed a *Statement of the Case in Support of Request for Entry of Default Judgment,*[5] as well as *Declaration of Matt Capelouto in Support of Request for Entry of Default Judgment.*[6] . (Karwin Dec)

35.   On **12-19-2023**, Plaintiffs obtained a $5,025,735.00 judgment against McDowell, that provided: "*Defendant Brandon Michael McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, **was intentional**, done without just cause or excuse, **wilful and malicious**, and **was done with the specific intent to cause serious harm and injury to plaintiffs' decedent, Alexandra Capelouto**, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions*."[7] (The "State Court Judgement") (Karwin Dec)

36.   Plaintiffs' **2-19-2023** $5,025,735.00 judgment against McDowell was broken down as follows: (1) $4,000,000 in general damages; (2) $1,000,000 in punitive damages; (3) $25,000

---

[5] A true and correct copy of Plaintiffs' 11-19-2023 *Statement of the Case in Support of Request for Entry of Default Judgment* is attached hereto as Exhibit "**3**" and incorporated herein by this reference. Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

[6] A true and correct copy of Plaintiffs' 11-19-2023 *Declaration of Matt Capelouto in Support of Request for Entry of Default Judgment* is attached hereto as Exhibit "**4**" and incorporated herein by this reference. Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

[7] A true and correct copy of the 12-21-2023 *State Court Judgment* by the Court for $5,025,735.00 against McDowell, is attached hereto as Exhibit "**5**" and incorporated herein by this reference. Plaintiffs request Judicial Notice of same per Federal Rule of Evidence 201.

1    for funeral and burial expenses; & (4) $735.00 in litigation costs = $5,025,735.00. . (Karwin

2    Dec)

3    37.    To this day, Defendant has not appealed the fraud judgment or tried to set it aside. (Karwin

4    Dec)

5    **THIS ADVERSARY CASE FOR NONDISCHARGEABILITY OF DEBT**

6    38.    On **5-11-2023**, Plaintiffs Matt Capelouto and Christine Capelouto timely filed the *Complaint*

7    *for Nondischargeability of Debt Pursuant to 11 USC § 523(a)(6) & for Denial of Discharge*

8    *Pursuant to 11 USC § 727(a)* ("Adversary Complaint") against the Debtor/Defendant Brandon

9    Michael Mcdowell, Adv. No. 6:23-ap-01041-MH [Adv Doc-1].[8] The Debtor's counsel was

10    attorney Summer Shaw.

11    39.    On **5-12-203**, the Court's *Summons & Notice of Status Conference* ("Summons") [ADV Doc-

12    2-1] set 6-12-2023 as the Defendant's deadline to respond to the Complaint.

13    40.    On **5-12-2023**, Plaintiffs filed and served the Complaint, Summons and Early Meeting of

14    Counsel and Status Conference Instructions Effective February 17, 2012 on Defendant [ADV

15    Doc-3].

16    41.    On **6-13-2023**, I gave Debtor's counsel Summer Shaw a professional courtesy notice of

17    Plaintiffs' intentions to pursue a default against the Debtor/Defendant, pursuant to Section 15

18    of the State Bar's enacted California Attorney Guidelines of Civility and Professionalism;

19    *Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.*, (2019) 36 Cal.App.5th at 134,137,

20    No. G060411, 2022 Cal. App. LEXIS 854 (Ct. App. Oct. 17, 2022); *Fasuyi v. Permatex, Inc.*,

21    84 Cal. Rptr. 3d 351 (Cal. Ct. App. 2008), quoting *Au-Yang v. Barton*, 90 Cal. Rptr. 2d 227

22    (1999)); *Lasalle v. Vogel*, 36 Cal. App. 5th 127, 248 Cal. Rptr. 3d 263 (2019); *Pearson v.*

23    *Continental Airlines*, (1970) 11 Cal.3d 613, 619); Weil & Brown, Civil Procedure Before

24    Trial (Rutter 2007) 5:68-5:70.

25    42.    On **6-14-2023**, the Debtor/Defendant filed a *Notice of Change of Address* [BK Doc-29] noting

26

27    _____

[8] A true and correct copy of the *Adversary Complaint* Adv. No. 6:23-ap-01041-MH is attached
28    hereto as Exhibit "**6**" and incorporated herein by this reference. Plaintiffs request Judicial Notice of
same per Federal Rule of Evidence 201.

1    that the Defendant is incarcerated at: Brandon Michael McDowell, Register No. 79243-509,

2    FCI Terminal Island, Federal Correctional Institution, PO Box 3007, San Pedro CA 90733.

3    43.    On **6-14--2023**, Plaintiffs filed a Request for Entry of Default Under Local Bankruptcy Rule

4    7055-1 [Adv Doc-4]

5    44.    On **6-14-2023**, the Court issued: Notice That a Default Has Not Been Entered by the Clerk

6    Against Defendant(s) Brandon Michael McDowell [Adv Doc-5].

7    45.    On **6-16-2023**, Plaintiffs filed a Request that the Clerk Issue Another Summons and Notice

8    of Status Conference (LBR 7004-1(a)(1)(B) [Adv Doc-8].

9    46.    On **6-16-2023**, the Court Clerk issued: another Summons Issued on Brandon Michael

10    McDowell setting the response date to the Complaint as 7-17-2023 [Adv Doc-9].

11    47.    On **6-16-2023**, Plaintiffs filed an *Amended Summons* Service Executed on Brandon Michael

12    McDowell [Adv Doc-10].[9]

13    48.    On **6-26-2023**, the Debtor's counsel filed a Motion to Withdraw as Attorney [BK Doc-30].

14    49.    On **7-21-2023**, the Court entered it's Order Granting Motion To Withdraw As Attorney [BK

15    Doc-34]

16    50.    On **7-31-2023**, Plaintiffs filed a *Request for Entry of Default* Under Local Bankruptcy Rule

17    7055-1 [Adv Doc-14]

18    51.    On **7-31-2023**, the Clerk entered *Default* against the Defendant McDowell [Adv Doc-15].

19    52.    On **1-8-2024**, Plaintiffs filed a *Motion for Summary Judgment* seeking judgment on their

20    nondischargeability claim [Adv Doc-20]. After a hearing held on 6-5-2024, the Court denied

21    Plaintiffs' Motion for Summary Judgment.

22    53.    On **6-20-2024**, Plaintiffs filed a *Motion for Default Judgment*. [Adv Doc-35], per Federal Rule

23    of Civil Procedure 55(b)(2).

24    54.    On **8-28-2024**, at the hearing on Plaintiffs' *Motion for Default Judgment*, the court found:

25    _____

26    [9]A true and correct copy of the *Proof of Service Of: Complaint for Nondischargeability of

27    Debt Pursuant to 11 USC § 523(a)(6) & for Denial of Discharge Pursuant to 11 USC § 727(a);
Summons Issued on Brandon Michael Mcdowell, aka "Trvpkid_69; & Early Meeting of Counsel and
Status Conference Instructions Effective February 17, 2012* - containing conformed copies of each -

28    [Adv Doc-10] - is attached hereto as Exhibit "**7**" and is incorporated herein by this reference.

As noted above, the Ninth Circuit has stated the following with regard to 11 U.S.C. § 523(a)(6):

Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor may not discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. . . . A "willful" injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. A "malicious" injury involves (1) a wrongful act, (2) done intentionally, . . . and (4) is done without just cause or excuse." In re Barboza, 545 F.3d 702, 706 (9th Cir. 2008).

To show that a debtor's conduct is willful requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself. Kawaauhau v. Geiger, 523 U.S. 57, 60–61 (1998). The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct. In re Su, 290 F.3d at 1143. "The Debtor is charged with the knowledge of the natural consequences of his actions." In re Ormsby, 591 F.3d 1199, 1206 (9th Cir. 2010).

Here, Plaintiffs' motion for default judgment clearly articulates a wrongful act, done intentionally. The final element of maliciousness is also not at issue, because "just cause or excuse" is in the nature of an affirmative defense, not raised here. See, e.g., In re Rodriguez, 568 B.R. 328, 340 (Bankr. S.D. Cal. 2017).

The remaining issue is whether Defendant intended or was substantially certain that injury would occur or committed an act that necessarily causes injury. "Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." In re Plyam, 530 B.R. 456, 463 (B.A.P. 9th Cir. 2015).

Here, the allegations in the motion for default judgment seem to, at best, reflect recklessness, rather than intentionality. Here, Plaintiffs have alleged that: (1) "ingestion of Fentanyl could cause death to Alexandra" (emphasis added) [Dkt. No. 35, Cohen Decl. ¶ 16]; (2) that McDowell knew …. They [the pills] contained Fentanyl or some other federally controlled substance [Dkt. No. 35, Cohen Decl. ¶ 13]; and (3) the "pill actually contained a lethal dose of the deadly opioid Fentanyl" [Dkt. No. 35, Cohen Decl. ¶ 11].

55.    While the Plaintiffs have addressed the court's tentative conclusions, they understand the need to clearly demonstrate Defendant's intentionality. The court has permitted Plaintiffs to amend their *Motion for Default Judgment* to directly reference the record evidencing McDowell's intentional conduct.

## SPECIFIC ALLEGATIONS IN THE ADVERSARY COMPLAINT OF DEFENDANT'S INTENTIONALITY

56.    ¶11 of the Adversary Complaint alleged:

"The Capelouto's are informed and believe that McDowell sold 11 pills to Alexandra that he represented to be the pure Percocet/Oxycontin Alexandra requested, that he later described to law enforcement as blue "Oxys" or "M30s." However, the pills were not pure Percocet/Oxycontin. **Each pill actually contained a lethal dose of fentanyl**."

57. It is Plaintiffs' position that this allegation in ¶11 establishes that McDowell's knowledge of the drug's actual content and its lethal potential demonstrates that he was fully aware of the risks to Alexandra.

58. ¶14 of the Adversary Complaint alleged:

"*The Capelouto's are informed and believe that prior to 12-22-2029, **McDowell knew that ingestion of Fentanyl was dangerous***."

59. It is Plaintiffs' position that this allegation in ¶14 establishes that McDowell had prior knowledge of the dangers associated with fentanyl. Awareness of fentanyl's lethal risks shows that McDowell was not ignorant of the drug's potential harm. This knowledge forms the basis for demonstrating intentionality, as it demonstrates that McDowell was aware of the risk his actions posed but chose to proceed with selling the drug anyway.

60. ¶15 of the Adversary Complaint alleged:

"*The Capelouto's are informed and believe that prior to 12-22-2029, **McDowell knew that ingestion of Fentanyl could cause death in humans***."

61. It is Plaintiffs' position that this allegation in ¶15 emphatically underscores McDowell's awareness of fentanyl's lethal properties. By acknowledging that he knew fentanyl could cause death, this allegation confirms that McDowell's actions went beyond mere recklessness; they were executed with the explicit understanding that they would lead to fatal consequences. This profound awareness highlights that McDowell's conduct was not just a matter of negligence but was a deliberate act with the certainty of causing death. The gravity of his knowledge underscores that the tragic death of Alexandra was not an unforeseeable outcome but a substantially certain result of his intentional actions. This critical insight solidifies the argument that McDowell's behavior was purposefully harmful, reinforcing the claim of intentionality with undeniable clarity and conviction..

62. ¶16 of the Adversary Complaint alleged:

"*The Capelouto's are informed and believe that on 12-22-20219, **McDowell knew that ingestion of Fentanyl could cause death to Alexandra***."

63. It is Plaintiffs' position that this allegation in ¶16 directly links McDowell's understanding of fentanyl's lethal dangers to the tragic death of Alexandra. By establishing that McDowell

1    was fully aware of the deadly risks associated with fentanyl on the very day he sold the drugs

2    to her, this allegation underscores his awareness of the imminent danger to Alexandra's life.

3    This evidence reveals that McDowell's actions were not merely reckless but intentionally

4    targeted at her, demonstrating a deliberate and malevolent intent. The clear and present danger

5    he acknowledged—knowing that the ingestion of fentanyl could lead to Alexandra's

6    death—confirms that her fatal outcome was not just a possible consequence but substantially

7    certain. This targeted and calculated awareness reinforces the argument that McDowell's

8    conduct was intentional, purposeful and egregiously harmful.

9    64.    The allegations in ¶¶11, 14, 15, and 16 collectively present a compelling case for McDowell's

10    intentionality. These allegations not only demonstrate McDowell's clear knowledge of

11    fentanyl's deadly nature but also his deliberate choice to distribute this fatal substance. This

12    pattern of behavior exposes a calculated and informed decision, directly linking his actions

13    to the harm inflicted upon Alexandra. This robust evidence substantiates the Plaintiffs'

14    argument that McDowell's conduct was intentional, rather than accidental or merely negligent.

15    65.    Recognizing the Court's need for unequivocal evidence to substantiate McDowell's intent and

16    addressing the issues with previous allegations in the Adversary Complaint in ¶¶11, 14, 15,

17    and 16 that (ambiguously) suggested the selling of fentanyl "could" rather than "would" result

18    in Alexandra's death, Plaintiffs also acknowledge the Court's concerns about the disjunctive

19    and oscillating nature of ¶6 in the State Court Complaint, which alternated between

20    negligence, intent, "or" reckless disregard.[10] To address these concerns with precision,

21

_____

22    [10] The Court's concern regarding the disjunctive use of the word "or" in paragraph 6 of the
State Court Complaint stems from its broad application, which includes negligence, intent, and
23    reckless disregard. This broad range undermines the specific focus on intentionality, as it
encompasses less severe misconduct, such as negligence, which does not meet the stringent
24    requirements for intentional harm. The Court recognized that the disjunctive "or" introduces
ambiguity by suggesting that the defendant's conduct could fall under any of the listed
25    categories—negligence, intent, or reckless disregard. This ambiguity complicates the court's ability
to clearly establish intentionality, as it permits interpretation that the defendant's actions might have
26    been merely reckless or negligent, rather than intentionally harmful. Furthermore, the use of "or"
implies a consideration of different standards of conduct simultaneously. This overlap creates the
27    potential for the court to view the defendant's actions as falling into a spectrum of behavior, including
only reckless or negligent acts, rather than focusing exclusively on intentionality. To address this
28

11

Plaintiffs urge the Court to focus on **¶25** of the Adversary Complaint. This paragraph provides unambiguous and definitive evidence of McDowell's deliberate intent to inflict harm on Alexandra without the disjunctive word "or." It conclusively demonstrates McDowell's malicious conduct and his specific intention to cause severe injury, eliminating any ambiguity or room for misinterpretation. This clear and targeted allegation provides robust and irrefutable support for the argument that McDowell's actions were intentional and aimed directly at causing harm, reinforcing the case with undeniable strength, clarity, and conviction.

66. The strongest evidence of McDowell's intentionality is detailed in **¶25** of the Adversary Complaint. This paragraph explicitly asserts that McDowell's selling fentanyl to Alexandria, were not mere acts of negligence but were extreme, outrageous, and specifically intended to cause serious harm to Alexandra. It unequivocally characterizes McDowell's conduct as intentional and malicious, with a clear aim of inflicting significant injury to Alexandra. This direct and precise language leaves no room for ambiguity or misinterpretation, demonstrating that McDowell's actions were executed with the intent to cause substantial harm, acknowledging that the resulting harm was a predictable and inevitable consequence of his conduct.

67. **¶25** of the Adversary Complaint alleged:

> "*The Capelouto's are informed and believe that McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, **was both extreme and outrageous**, were **intentional**, done without just cause or excuse, **wilful and malicious**, and was **done with the specific intent to cause serious harm and injury to Alexandra, and/or was a categorically harmful activity**, and **that harm was substantially certain to occur as a result of his actions**.*"

68. Upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); see also *Almog v. Golden Summit Investors Group, Ltd.*, 2012 WL 12867972 at

---

issue, Plaintiffs must present allegations with precise, unequivocal language that unequivocally highlights intentionality. This approach is essential to ensure that the court concentrates solely on proving that the defendant's actions were deliberate and purposeful, thereby eliminating any ambiguity created by the disjunctive "or" and reinforcing the argument that the defendant's conduct was intentionally malicious.

1    *4 (C.D. Cal. 2012) ("When reviewing a motion for default judgment, the Court must accept

2    the well-pleaded allegations of the complaint relating to liability as true.").

3    **JUDGMENT INTEREST CALCULATION**

4    69.    Pursuant to by Bankruptcy Rule 3001(c)(2)(A), as of today's date, interest of 10% on the

5    $5,025,735.00 judgment, since 2-19-2023 (563 days at $1,376.9137 interest per day) comes

6    to $775,202.41, bringing the total amount due at **$5,800,937.41**.[11]

7    **RESTORING JUSTICE FOR ALEXANDRIA: HOLDING MCDOWELL
8    ACCOUNTABLE FOR THE IRREPARABLE LOSS OF ALEXANDRA AND ENSURING
     HIS ACTIONS ARE NOT SHIELDED BY BANKRUPTCY**

9    70.    The Defendant's deliberate actions not only stole Alexandra's future but also robbed her

10    parents of their beloved child. No monetary compensation can ever truly make up for this

11    profound loss. It is crucial to hold McDowell accountable for his intentional and reprehensible

12    conduct. His attempt to evade responsibility through bankruptcy must be thwarted.

13    71.    While no legal remedy can fully mend the wounds from this tragic wrongful death, affirming

14    the nondischargeability of this debt under 11 USC § 523(a)(6) will send a powerful message

15    that McDowell's intentional cruelty will not go unpunished. This step will provide some

16    measure of solace to the Capelouto family, reinforcing that such deliberate harm cannot be

17    hidden behind bankruptcy protections.

18    72.    The evidence substantiates the default judgment and the **$5,800,937.41** awarded. Plaintiffs

19    respectfully urge the court to grant their *Motion for Default Judgment* to ensure that

20    McDowell's intentional actions are properly addressed and that justice for Alexandra is served.

21    I declare under penalty of perjury under the laws of the United States, State of California that

22    the foregoing is true and correct.

23    Executed September 5, 2024, at Los Angeles, CA

24    By */s/ Baruch C. Cohen*
         Baruch C. Cohen

25

26

27

28

---

[11] https://www.calculators.org/business/judgment.php

# DECLARATION OF MATT CAPELOUTO

I, Matt Capelouto, declare and state as follows:

1.  The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.  This Declaration is in support of the **PLAINTIFFS' AMENDED MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1** filed by me and my wife Christine Capelouto vs. Brandon Michael Mcdowell, aka "trvpkid_69" 6:23-ap-01041-MH.

3.  My wife, Christine Capelouto, and I are the biological parents of Alexandra Capelouto.

4.  Alexandra was born February 24, 1999.

5.  In December of 2019, she was in her sophomore year Arizona State University, with a major in Sociology. Attached hereto as Exhibit 1 is a photo of myself with Alex in her ASU dorm.

6.  After graduation, her plan was to become a social worker so that she could help others.

7.  On December 22, 2019, she was staying at our family home for her winter break from school. She was 20 years old.

8.  Alexandra went on Snapchat and contacted an individual named Brandon McDowell in order to purchase the painkiller ..Percocet.. from McDowell. McDowell agreed to sell Percocet pills to Alexandra. He drove to my house and sold Alexandra some pills.

9.  The pills were not Percocet as Alexandra thought. They were counterfeit pills manufactured with the deadly opioid fentanyl.

10. That evening, Alexandra ingested half of one of the pills. The fentanyl in the pill was a deadly dose. She died that evening as a result of the fentanyl poisoning.

11. Brandon McDowell was charged in federal court with a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(c) .. Possession with Intent to Distribute Fentanyl.

12. On July 1, 2022, McDowell pled guilty to the charges and was sentenced to 8 years in federal prison.[12]

---

[12] A true and correct copy of McDowell's 7-11-2022 *Plea Agreement* In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69 " # ED CR 21-238-JGB is attached hereto as Exhibit "**1**" and incorporated herein by this reference.

13.  As part of the plea, McDowell specifically admits that knowingly intended to sell fentanyl to our daughter. (See Exhibit 1 .. 6:11-7:23).

14.  I will never say my daughter died of a drug overdose. She was deceived to death.

15.  Since Alexandra's death, my wife and I have dedicated our lives to prevent other parents from experiencing the absolute devastation and anguish that comes with losing a child this way.

16.  I serve as president of the non-profit Stopdrughomicide.org and have worked tirelessly with legislators attempting to pass Alexandra's Law would require courts to issue a written admonishment to defendants convicted of a range of fentanyl-related offenses, from possessing for sale to sharing or transporting the drug. This would alert the defendant that selling or giving away drugs could result in death, and that, if they do it again and somebody dies as a result, they could be on the hook for murder.

17.  In March of 2022, my wife, Christine, was diagnosed with stage 4 triple negative breast cancer, which has metastasized to her lungs. I have no doubt that the grief of losing our daughter caused stress and strain on her body that brought on the cancer. I am now facing the possibility of losing my wife as a direct result of the death of our daughter. Attached hereto as Exhibit **8**, is a photo of Christine with Alex. Their smiles reflect the bond they shared.

18.  The intentional and despicable acts of Brandon McDowell have utterly destroyed our lives and have taken a tremendous toll on our family.

19.  Alex's three siblings, Skye (age 22) and Brooke (age 32) and Brittany (age 33) have also been permanently impacted by this profound loss to our family. Exhibit **9**, attached hereto, is a photo of Alex with her sisters.

20.  If there is anything I would wish for today, it would be to hear Alexandra's voice. Since the day she was born, the sound of her voice filled our hearts and lives with love and hope.

21.  Exhibit **10** attached hereto is the last photo Christine and I have, together, with Alex.

22.  Counterfeit pills manufactured with Fentanyl in place of the expected ingredients pose one of the faster growing dangers facing our society. In our case, McDowell engaged in that crime knowingly and intentionally. Because of his callous disregard we will miss out on attending Alexandra's graduation and sharing the milestones of our lives together.

23.     We are seeking an award that will reflect our loss while, at the same time, sends a message to others who engage in this nefarious activity.

24.     Based on the foregoing, my wife Christine and I seek a joint award of **$5,800,937.41** against Brandon McDowell for his intentional acts that took our beloved Alex from us.


        I declare under penalty of perjury under the laws of the United States, and State of California that the foregoing is true and correct.

        Executed September 5, 2024, at Temecula, CA

                                        By /s/ *Matt Capelouto*
                                        Matt Capelouto

1    **DECLARATION OF ROBERT P. KARWIN, ESQ**

2    I, ROBERT P. KARWIN, declare as follows:

3    1.    The facts stated below are true and correct within the best of my personal knowledge and if

4    called upon to testify to them I could and would competently do so.

5    2.    I am the an attorney in good standing with the State Bar of California and am attorney of

6    record for the plaintiffs in the State Court Action.

7    3.    This declaration is in support of **PLAINTIFFS' AMENDED MOTION FOR DEFAULT**

8    **JUDGMENT UNDER LBR 7055-1**

9    4.    In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69" #ED CR

10    21-238-JGB, on 7-11-2022, McDowell signed a *Plea Agreement*, with the United States

11    Attorney's Office for the Central District of California, where he pled guilty of the crime

12    of Possession with Intent to Distribute Fentanyl, in violation of 21 USC §§

13    841(a)(1)(b)(1)© [Doc-32].[13] [14]

14    5.    On 11-30-2021, the Capeloutos sued McDowell in the Superior Court of the State of

15    California, Riverside County, # CVSW219985 (the "State Court Case"), pursuant to the

16    Drug Dealer Liability Act "DDLA" codified as Health and Safety Code sections 11700, et

17    seq, for the wrongful death of Alexandra, who on 12-22-2019, McDowell illegally sold

18    Percocet and/or Oxycontin pills (blue "Oxys" or "M30s") containing lethal doses of

19    fentanyl, which caused her death.[15]

20    6.    The Capeloutos sought $4,000,000 in general damages plus $1,000,000 in punitive

21

22    _____

23    [13] 21 USC §§ 841(a)(1)(b)(1)(C) provides that any person who knowingly or intentionally
distributes, or possesses with intent to distribute, a Schedule III, IV, or V controlled substance, as

24    defined in the Controlled Substances Act, shall be punished by imprisonment for up to five years, a
fine, or both.

25    [14] A true and correct copy of McDowell's 7-11-2022 *Plea Agreement* In *United States of*

26    *America v. Brandon Michael Mcdowell*, aka "trvpkid_69" # ED CR 21-238-JGB is attached hereto
as Exhibit "**1**" and incorporated herein by this reference.

27
[15] A true and correct copy of the Capelouto's State Court Complaint # CVSW219985 is

28    attached hereto as Exhibit "**2**" and incorporated herein by this reference.

1    damages - believing that this civil judgment would send a message to other fentanyl

2    peddlers as to the value of the lives lost by their callous actions and prompt them to give

3    up the trade, possibly saving other parents from experiencing this heartbreak.

4    7.    Defendant McDowell was represented by counsel Matthew T. Ward in the State Court

5    Case from the inception (11-30-2022) until such time as he withdrew as counsel (Ward

6    was relieved as counsel by court order on 7-24-23). While Ward represented Defendant in

7    the State Court Action, Ward: (1) stipulated to set aside default 6-2-2022; (2) answered the

8    Complaint 6-21-2022; (3) posted jury fees 7-18-2022; (4) participated in the Case

9    Management Statement 7-18-2022 and appeared at the CMC; (5) filed the Notice of Stay

10    (due to the bankruptcy) 12-23-2022; & (6) filed a Motion to be Relieved as counsel 6-6-

11    2023.

12    8.    On 11-15-2023, Defendant defaulted in the State Court Action.

13    9.    0n 11-19-2023, Plaintiffs filed for Default Judgment, and filed a *Statement of the Case in*

14    *Support of Request for Entry of Default Judgment*,[16] as well as *Declaration of Matt*

15    *Capelouto in Support of Request for Entry of Default Judgment*.[17]

16    10.    On 12-19-2023, Plaintiffs obtained a $5,025,735.00 judgment against McDowell, that

17    provided: "*Defendant Brandon Michael McDowell's selling harmful narcotics such as*

18    *fentanyl, particularly under the false premise that they were prescription painkillers, was*

19    *both extreme and outrageous, was intentional, done without just cause or excuse, wilful*

20    *and malicious, and was done with the specific intent to cause serious harm and injury to*

21    *plaintiffs' decedent, Alexandra Capelouto, and/or was a categorically harmful activity, and*

22

23

24    _____

25    [16] A true and correct copy of Plaintiffs' 11-19-2023 *Statement of the Case in Support of*
*Request for Entry of Default Judgment* is attached hereto as Exhibit "**3**" and incorporated herein by

26    this reference.

27    [17] A true and correct copy of Plaintiffs' 11-19-2023 *Declaration of Matt Capelouto in Support*
*of Request for Entry of Default Judgment* is attached hereto as Exhibit "**4**" and incorporated herein

28    by this reference.

1    *that harm was substantially certain to occur as a result of his actions.*"[18] (The "State Court

2    Judgement")

3    11.    Plaintiffs' 2-19-2023 $5,025,735.00 judgment against McDowell was broken down as

4    follows: (1) $4,000,000 in general damages; (2) $1,000,000 in punitive damages; (3)

5    $25,000 for funeral and burial expenses; & (4) $735.00 in litigation costs = $5,025,735.00.

6

7    12.    To this day, Defendant has not appealed the fraud judgment or tried to set it aside.

8    13.    Pursuant to by Bankruptcy Rule 3001(c)(2)(A), as of today's date, interest of 10% on the

9    $5,025,735.00 judgment, since 2-19-2023 (563 days at $1,376.9137 interest per day)

10    comes to $775,202.41, bringing the total amount due at **$5,800,937.41**.[19]

11    I declare under penalty of perjury under the laws of the United States and the State of

12    California that the foregoing is true and correct.

13    DATED: September 5, 2024

14    By */s/ Robert P. Karwin*
    Robert P. Karwin, Esq.

15

16

17

18

19

20

21

22

23

24

25

_____

26    [18] A true and correct copy of the 12-21-2023 State Court Judgment by the Court for
    $5,025,735.00 against McDowell, is attached hereto as Exhibit "**5**" and incorporated herein by this
27    reference.

28    [19] https://www.calculators.org/business/judgment.php

**EXHIBIT "1"**

1   TRACY L. WILKISON
    United States Attorney
2   SCOTT M. GARRINGER
    Assistant United States Attorney
3   Chief, Criminal Division
    STEPHEN T. MERRILL (Cal. Bar No. 255827)
4   Special Assistant United States Attorney
    JOHN A. BALLA (Cal. Bar No. 295474)
5   Assistant United States Attorney
         3403 Tenth Street, Suite 200
6        Riverside, California 92501
         Telephone: (951) 276-6267
7        Facsimile: (951) 276-6202
         E-mail:    Stephen.Merrill@usdoj.gov
8                   John.Balla@usdoj.gov

9   Attorneys for Plaintiff
    UNITED STATES OF AMERICA

10

FILED
CLERK, U.S. DISTRICT COURT

07/11/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

                 UNITED STATES DISTRICT COURT
11
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
    UNITED STATES OF AMERICA,          No. ED CR 21-238-JGB
13
             Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
14                                     BRANDON MICHAEL MCDOWELL
                  v.
15
    BRANDON MICHAEL MCDOWELL,
16    aka "trvpkid_69,"

17           Defendant.

18

19

20        1.   This constitutes the plea agreement between Brandon Michael

21   McDowell ("defendant") and the United States Attorney's Office for

22   the Central District of California (the "USAO") in the above-

23   captioned case.  This agreement is limited to the USAO and cannot

24   bind any other federal, state, local, or foreign prosecuting,

25   enforcement, administrative, or regulatory authorities.

26                      DEFENDANT'S OBLIGATIONS

27        2.   Defendant agrees to:

28

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

2

       i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

       j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

       k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

       a.    Not contest facts agreed to in this agreement.

       b.    Abide by all agreements regarding sentencing contained in this agreement.

       c.    At the time of sentencing, move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

       d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

3

and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4. Defendant understands that for defendant to be guilty of
the crime charged in the superseding information, that is, Possession
with Intent to Distribute Fentanyl, in violation of Title 21, United
States Code, Sections 841(a)(1), (b)(1)(C), the following must be
true:

     a.  First, defendant knowingly possessed fentanyl;

     b.  Second, defendant knew that it was fentanyl or some
other federally controlled substance; and

     c.  Third, defendant intended to distribute it to another
person.

<u>PENALTIES AND RESTITUTION</u>

5. Defendant understands that the statutory maximum sentence
that the Court can impose for a violation of Title 21, United States
Code, Sections 841(a)(1), (b)(1)(C), is: 20 years' imprisonment; a
lifetime period of supervised release; a fine of $1,000,000 or twice
the gross gain or gross loss resulting from the offense, whichever is
greatest; and a mandatory special assessment of $100.

6. Defendant understands that the statutory mandatory minimum
sentence that the Court must impose for a violation of 21 U.S.C.
§§ 841(a)(1), (b)(1)(C), is: a 3-year period of supervised release in
addition to any term of imprisonment, and a mandatory special
assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a

5

federal crime for a convicted felon to possess a firearm or
ammunition. Defendant understands that the conviction in this case
may also subject defendant to various other collateral consequences,
including but not limited to revocation of probation, parole, or
supervised release in another case and suspension or revocation of a
professional license. Defendant understands that unanticipated
collateral consequences will not serve as grounds to withdraw
defendant's guilty plea.

10. Defendant and his counsel have discussed the fact that, and
defendant understands that, if defendant is not a United States
citizen, the conviction in this case makes it practically inevitable
and a virtual certainty that defendant will be removed or deported
from the United States. Defendant may also be denied United States
citizenship and admission to the United States in the future.
Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case. Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including his attorney or the Court, can predict to an
absolute certainty the effect of his conviction on his immigration
status. Defendant nevertheless affirms that he wants to plead guilty
regardless of any immigration consequences that his plea may entail,
even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11. Defendant admits that defendant is, in fact, guilty of the
offense to which defendant is agreeing to plead guilty. Defendant
and the USAO agree to the statement of facts provided below and agree

that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On December 22, 2019, in Riverside County within the Central District of California, defendant possessed fentanyl with intent to distribute it to another. He in fact distributed the fentanyl to Alexandra Capelouto, the use of which resulted in Alexandra's death on or about December 23, 2019.

Specifically, on the night of December 22, 2019, Alexandra Capelouto asked defendant if he could sell her Percocet pills, a prescription painkiller. Defendant agreed to sell Alexandra Percocet pills. Defendant drove to Alexandra's home in Temecula, California, and sold her what turned out to be approximately 11 counterfeit oxycodone pills that he later described to law enforcement as blue "Oxys" or "M30s." Defendant knew it was illegal for him to sell the pills and that they contained fentanyl or some other federally controlled substance. Upon going to bed the night of December 22, 2019, Alexandra Capelouto ingested half of one of the pills. The fentanyl entered her system, poisoning her body, and caused her death.

<u>SENTENCING FACTORS</u>

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set

1  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

2  Sentencing Guidelines are advisory only, that defendant cannot have

3  any expectation of receiving a sentence within the calculated

4  Sentencing Guidelines range, and that after considering the

5  Sentencing Guidelines and the other § 3553(a) factors, the Court will

6  be free to exercise its discretion to impose any sentence it finds

7  appropriate up to the maximum set by statute for the crime of

8  conviction.

9      13.  Defendant and the USAO agree to the following applicable

10 Sentencing Guidelines factors:

11   Base Offense Level:          38        U.S.S.G. § 2D1.1(a)(2)

12 Defendant and the USAO reserve the right to argue that additional

13 specific offense characteristics, adjustments, and departures under

14 the Sentencing Guidelines are appropriate.

15     14.  Pursuant to U.S.S.G. §§ 1B1.2(a) and (c), the parties

16 stipulate that the defendant committed a separate violation of 21

17 U.S.C. § 841(b)(1)(C) (distribution of controlled substances

18 resulting in death), in that, on or about December 22, 2019, the

19 defendant knowingly and intentionally distributed fentanyl, the use

20 of which resulted in the death of A.C., and that such overdose death

21 resulting from the defendant's distribution of fentanyl constitutes a

22 more serious offense than the offense of conviction for purposes of

23 calculating the applicable Sentencing Guidelines offense level.

24 Accordingly, pursuant to U.S.S.G. §§ 2D1.1(a)(2), 1B1.2(a) and

25 1B1.2(c), the parties stipulate that the Court should calculate the

26 Sentencing Guidelines as if defendant had been convicted of the

27 offense described in this paragraph and apply a base offense level

28 38.  The parties further stipulate that application of such a base

offense level, which is greater than the base offense level that
would otherwise apply, is independently supported by U.S.S.G. §
5K2.1.  Defendant will not recommend, argue, or otherwise suggest
that the court impose a base offense level other than 38.

15.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

16.  Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant
gives up the following rights:

    a.  The right to persist in a plea of not guilty.

    b.  The right to a speedy and public trial by jury.

    c.  The right to be represented by counsel -- and if
necessary have the Court appoint counsel -- at trial.  Defendant
understands, however, that, defendant retains the right to be
represented by counsel -- and if necessary have the Court appoint
counsel -- at every other stage of the proceeding.

    d.  The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant guilty
beyond a reasonable doubt.

    e.  The right to confront and cross-examine witnesses
against defendant.

    f.  The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

19. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 210 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or

10

1   supervised release imposed by the Court: the conditions set forth in

2   Second Amended General Order 20-04 of this Court; the drug testing

3   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

4   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

5       20.  The USAO agrees that, provided (a) all portions of the

6   sentence are at or below the statutory maximum specified above and

7   (b) the Court imposes a term of imprisonment of no less than 168

8   months, the USAO gives up its right to appeal any portion of the

9   sentence.

10                  RESULT OF WITHDRAWAL OF GUILTY PLEA

11      21.  Defendant agrees that if, after entering a guilty plea

12  pursuant to this agreement, defendant seeks to withdraw and succeeds

13  in withdrawing defendant's guilty plea on any basis other than a

14  claim and finding that entry into this plea agreement was

15  involuntary, then (a) the USAO will be relieved of all of its

16  obligations under this agreement; and (b) should the USAO choose to

17  pursue any charge that was either dismissed or not filed as a result

18  of this agreement, then (i) any applicable statute of limitations

19  will be tolled between the date of defendant's signing of this

20  agreement and the filing commencing any such action; and

21  (ii) defendant waives and gives up all defenses based on the statute

22  of limitations, any claim of pre-indictment delay, or any speedy

23  trial claim with respect to any such action, except to the extent

24  that such defenses existed as of the date of defendant's signing this

25  agreement.

26

27

28

EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

12

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

25.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

13

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

14

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          7/8/2022
STEPHEN T. MERRILL                  _____
Special Assistant U.S. Attorney     Date
JOHN A. BALLA
Assistant United States Attorney


_____          7/1/22
BRANDON MICHAEL MCDOWELL            _____
Defendant                           Date


_____          7/1/22
ANDREW BYRD                         _____
Deputy Federal Public Defender      Date
Attorney for Defendant
BRANDON MICHAEL MCDOWELL


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be

15

1  filed, of possible defenses that might be asserted either prior to or

2  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

3  of relevant Sentencing Guidelines provisions, and of the consequences

4  of entering into this agreement.  No promises, inducements, or

5  representations of any kind have been made to me other than those

6  contained in this agreement.  No one has threatened or forced me in

7  any way to enter into this agreement.  I am satisfied with the

8  representation of my attorney in this matter, and I am pleading

9  guilty because I am guilty of the charge and wish to take advantage

10  of the promises set forth in this agreement, and not for any other

11  reason.

12

13  _____        7/1/22  _____
    BRANDON MICHAEL MCDOWELL                 Date

14  Defendant

15

16              CERTIFICATION OF DEFENDANT'S ATTORNEY

17      I am Brandon Michael McDowell's attorney.  I have carefully and

18  thoroughly discussed every part of this agreement with my client.

19  Further, I have fully advised my client of his rights, of possible

20  pretrial motions that might be filed, of possible defenses that might

21  be asserted either prior to or at trial, of the sentencing factors

22  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

23  provisions, and of the consequences of entering into this agreement.

24  To my knowledge: no promises, inducements, or representations of any

25  kind have been made to my client other than those contained in this

26  agreement; no one has threatened or forced my client in any way to

27  enter into this agreement; my client's decision to enter into this

28  agreement is an informed and voluntary one; and the factual basis set

                                16

1  forth in this agreement is sufficient to support my client's entry of

2  a guilty plea pursuant to this agreement.

3  _____        _____7/1/22_____

4  ANDREW BYRD                         Date
   Deputy Federal Public Defender
5  Attorney for Defendant
   BRANDON MICHAEL MCDOWELL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        17

# Exhibit A

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          ED CR No. 21-238(A)-JGB

11            Plaintiff,                S U P E R S E D I N G
                                        I N F O R M A T I O N
12            v.
                                        [21 U.S.C. §§ 841(a)(1),
13   BRANDON MICHAEL MCDOWELL,          (b)(1)(C): Possession with Intent
       aka "trvpkid_69,"                to Distribute Fentanyl]
14
              Defendant.
15

16

17        The United States Attorney charges:

18            [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

19        On or about December 22, 2019, in Riverside County, within the

20   Central District of California, defendant BRANDON MICHAEL MCDOWELL,

21   also known as "trvpkid_69," knowingly and intentionally possessed

22   ///

23   ///

24

25

26

27

28

1   with intent to distribute fentanyl, a Schedule II narcotic drug

2   controlled substance.

3

4                                          TRACY L. WILKISON
                                           United States Attorney
5

6

7                                          SCOTT M. GARRINGER
                                           Assistant United States Attorney
8                                          Chief, Criminal Division

9                                          JERRY C. YANG
                                           Assistant United States Attorney
10                                         Chief, Riverside Branch Office

11                                         STEPHEN T. MERILL
                                           Special Assistant U.S. Attorney
12                                         JOHN A. BALLA
                                           Assistant United States Attorney
13                                         Riverside Branch Office

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   2

## CERTIFICATE OF SERVICE

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT BRANDON MICHAEL MCDOWELL**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows: **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **July 11, 2022**, in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
Stephanie Ascencio
Legal Assistant

1

## ATTACHMENT

2   Andrew Byrd - DFPD
    Federal Public Defenders Office
3   3801 University Avenue, Suite 700
    Riverside, CA 92501
4   andrew_byrd@fd.org

5   Young J. Kim - DFPD
    Federal Public Defenders Office
6   3801 University Avenue Suite 700
    Riverside, CA 92501
7   Young_Kim@fd.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "2"**

1     LAW OFFICE OF
     ROBERT P. KARWIN
2     29800 Bradley Rd., Suite 103
     Menifee, CA 92586
3     Telephone: (951) 246-4514
     Facsimile: (951) 246-8174
4     Email: rkarwin@karwinlaw.com

5     ROBERT P. KARWIN, ESQ. – SBN 190573

6     TRUJILLO & TRUJILLO
     41593 Winchester Rd., Suite 201
7     Temecula, CA 92590
     Telephone: (951)296-9529
8     Facsimile: (951)296-9533
     Email: trulaw@trujillo-law.us
9
     MELODY A. TRUJILLO – SBN 165218
10
     Attorneys for plaintiffs, Matt Capelouto
11     and Christine Capelouto

12

**FILED**
Superior Court of California
County of Riverside
**11/30/2021**
**M. Lopez**
Electronically Filed

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                FOR THE COUNTY OF RIVERSIDE

15

16

| | |
|---|---|
| 17   Matt Capelouto and Christine Capelouto | Case No.   **CVSW2109985** |
| 18          Plaintiffs, | |
| 19   vs. | COMPLAINT FOR DAMAGES |
| 20   Brandon Michael McDowell, Justin Lee McDowell, Jill McCarthy, and DOES 1-50, | 1.   Wrongful Death<br>2.   Violation of Drug Dealers Liability Act |
| 21   INCLUSIVE, | |
| 22         Defendants. | |

23

24

25

26

27

28

Plaintiffs, Matt Capelouto and Christine Capelouto allege:

## FIRST CAUSE OF ACTION

### (Wrongful Death as to all Defendants)

1.     The true names and capacities of the Defendants, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs at the time of filing this Complaint and Plaintiffs, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiffs as herein alleged.

2.     Plaintiffs, Matt Capelouto and Christine Capelouto are individuals, residing in the City of Temecula, County of Riverside, State of California. They are the parents of decedent, Alexandra Capelouto (hereinafter "Alexandra").

3.     Defendants, Brandon Michael McDowell, Justin Lee McDowell, and Jill McCarthy are individuals, residing in the City of Riverside, County of Riverside, State of California.

4.     At all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining defendants and was at all times herein mentioned acting within the scope of said agency and employment.

5.     On or about December 22, 2019, Defendants Justin Lee McDowell, and Jill McCarthy, and Does 1 to 50, inclusive, were the owners and occupants of a residential property known commonly as 11434 Millard Dr., Riverside, California 92503 (hereinafter "Subject Residence"). Defendant Brandon Michael McDowell is the adult child of Defendants Justin Lee McDowell, and Jill McCarthy and was a permanent resident of their home at 1434 Millard Dr.,

2

Riverside, California 92503.

6.      In December of 2019, Defendant Brandon Michael McDowell, and Does 1 to 50 inclusive, operated a business out of 11434 Millard Dr., Riverside, California 92503 comprised of manufacturing, distribution, and sales of narcotics including, but not limited to oxycontin and fentanyl. Defendants Justin Lee McDowell, and Jill McCarthy either had direct knowledge of the operation of said business endeavor, negligently failed to take reasonable steps to discover the operation, or exhibited reckless disregard in remaining intentionally ignorant of said operation. Each such act and omission represents ratification and approval of the drug related activities engaged in by Defendant Brandon Michael McDowell and Does 1 to 50, inclusive, out of the subject residence.

7.      On or about December 22, 2019, Defendant Brandon Michael McDowell was at the subject residence. He was contacted via Snapchat by plaintiffs' decedent, Alexandra Capelouto, who inquired about purchasing pure oxycontin from Defendant Brandon Michael McDowell for recreational purposes. While at 11434 Millard Dr., Riverside, California 92503, Defendant Brandon Michael McDowell informed plaintiffs' decedent that he was in possession of pure oxycontin for sale and agreed to travel to the plaintiff's residence in Temecula, California to deliver said oxycontin to Alexandra.

8.      At approximately 8:30 – 9:00 p.m. on December 22, 2019, Defendant Brandon Michael McDowell arrived at the plaintiff's home. He contacted plaintiffs' decedent via either Snapchat or text message to inform her of his arrival.

9.      Plaintiffs' decedent exited the home and met Defendant Brandon Michael McDowell at his car outside the residence. Defendant Brandon Michael McDowell sold pills to plaintiff's decedent that he represented to be the pure oxycontin that plaintiffs' decedent requested. However, the pills were not pure oxycontin. Each pill actually contained a lethal dose

3

1    of fentanyl.

2        10.    The pills were manufactured using fentanyl as either a filler or total replacement

3    for oxycontin in order to defraud purchasers and create a higher profit margin for the seller,

4    distributor, and manufacturer of the pills. They were manufactured to look identical to pure

5    oxycontin pills so that the alterations were undetectable by the purchaser or user.

6

7        11.    Defendant Brandon Michael McDowell negligently, intentionally, or with reckless

8    disregard, misrepresented the content of the pills he sold to plaintiffs' decedent such that she was

9    not able to manage the quantity and nature of material she was about to ingest. That same

10    evening, Alexandra Capelouto did, in fact, consume one or more of the pills she purchased from

11    Defendant Brandon Michael McDowell.

12

13        12.    The following day, on or about December 23, 2019, Alexandra Capelouto was

14    found unresponsive by the plaintiffs. She was ultimately pronounced dead with the cause of death

15    being a lethal dose of fentanyl, traced to the pills she purchased from Defendant Brandon Michael

16    McDowell on or about December 22, 2019.

17        13.    The pills that Defendant Brandon Michael McDowell sold to plaintiff's decedent

18    were stored, prepared for distribution, and/or manufactured in the residence that he shared with

19    Defendants Justin Lee McDowell, and Jill McCarthy, with their knowledge, approval, negligence,

20    and/or reckless disregard.

21

22        14.    Defendants' negligent and wrongful conduct at all times mentioned herein was

23    both extreme and outrageous and was done with the specific intent to cause, or with reckless

24    disregard of causing, serious harm and injury to plaintiffs' decedent, Alexandra Capelouto.

25        15.    The conduct of Defendants did in fact, directly and proximately, cause Alexandra

26    Capelouto serious mental and physical distress, which resulted in her untimely death.

27        16.    As a legal, direct and proximate result of the conduct of Defendants, and each of

28

4

COMPLAINT FOR DAMAGES

them, including Does 1 through 50, Plaintiffs have suffered damages in an amount to be proven at

trial that exceeds the jurisdictional minimum of this Court.

### SECOND CAUSE OF ACTION

(Violation of the Drug Dealer Liability Act "DDLA" as to

Defendant Brandon Michael McDowell and Does 1 to 50, Inclusive, only)

17.    Plaintiffs re-allege and incorporate by reference all of the allegations in paragraphs

1 through 16 of this complaint as though fully set forth herein.

18.    The California Drug Dealer Liability Act ("DDLA"), codified as Health and Safety

Code sections 11700, et seq., was enacted to provide a civil remedy for damages to persons

injured as a result of the use of an illegal controlled substance.

19.    Health and Safety Code section 11705, subdivision (a)(l), which is part of the

DDLA, provides that a "parent, legal guardian, child, spouse, or sibling" of the individual

controlled substance user is entitled to bring an action for damages caused by an individual's use

of an illegal controlled substance.

20.    On information and belief, Defendant Brandon Michael McDowell and Does 1 to

50 wrongfully and illegally supplied, marketed and distributed these controlled substances to

plaintiff's decedent, Alexandra Capelouto, on or about December 22, 2019, which either the same

or the day before her death. On or about December 22, 2019, Alexandra ingested these same

drugs and shortly thereafter died as a result.

21.    As a result of the tortious conduct of Defendants, and each of them, including the

unlawful prescribing, procurement, distribution, furnishing, supplying, administering and

dispensing of illegal controlled substances, Plaintiffs have suffered severe damages that exceed

the jurisdictional minimum of this Court.

COMPLAINT FOR DAMAGES

<u>FIRST CAUSE OF ACTION</u>

A. General damages in a sum according to proof;

B. Sums incurred and to be incurred for services to hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

C. Funeral and burial expenses;

D. Housekeeping expenses incurred and to be incurred;

E. Loss of love, companionship, affection, society, and solace;

F. Loss of income incurred and to be incurred according to proof;

G. For interest provided by law including, but not limited to, California Civil Code, Section 3291; and

H. Costs of suit and, for such other and further relief as the court deems proper.

<u>SECOND CAUSE OF ACTION</u>

A. General damages in a sum according to proof;

B. Sums incurred and to be incurred for services to hospitals, physicians, surgeons, nurses and other professional services, ambulance service, x-rays and other medical supplies and services;

C. Loss of love, companionship, affection, society and solace;

D. Loss of income incurred and to be incurred according to proof;

E. Reasonable attorneys fees;

F. Exemplary damages;

G. For interest provided by law including, but not limited to, California Civil Code, Section 3291; and

H. Costs of suit and, for such other and further relief as the court deems proper.

6

1    Dated:    November 30, 2021         LAW OFFICE OF ROBERT P. KARWIN

2

3                                         By: _____

4                                             Robert P. Karwin, Esq.
                                              Attorneys for plaintiffs
5

6    Dated:    November 30, 2021         TRUJILLO & TRUJILLO

7

8                                         By: _____
                                              Melody A. Trujillo, Esq.
9                                             Attorneys for plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

COMPLAINT FOR DAMAGES

**EXHIBIT "3"**

Electronically FILED by Superior Court of California, County of Riverside on 11/28/2023 02:07 PM
Case Number CVSW2109985 0000076830063 - Jason B. Galkin, Executive Officer/Clerk of the Court By Dawn Brown, Clerk

1    LAW OFFICE OF
     ROBERT P. KARWIN
2    29800 Bradley Rd., Suite 103
     Menifee, CA  92586
3    Telephone:  (951) 246-4514
     Facsimile:  (951) 346-3684
4    Email: rkarwin@karwinlaw.com

5    ROBERT P. KARWIN, ESQ. – SBN 190573

6    TRUJILLO & TRUJILLO
     41593 Winchester Rd., Suite 201
7    Temecula, CA 92590
     Telephone: (951)296-9529
8    Facsimile: (951)296-9533
     Email: trulaw@trujillo-law.us
9
     MELODY A. TRUJILLO – SBN 165218
10
     Attorneys for plaintiffs, Matt Capelouto
11   and Christine Capelouto

12

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14               FOR THE COUNTY OF RIVERSIDE

15

16

17   Matt Capelouto and Christine Capelouto,     Case No.  CVSW2109985

18                Plaintiffs,

19   vs.                         PLAINTIFF'S STATEMENT OF THE CASE IN
                                   SUPPORT OF REQUEST FOR ENTRY OF
20   Brandon Michael McDowell and Does 1 to    DEFAULT JUDGMENT
    50, inclusive,
21
               Defendants.
22

23

24

25       Plaintiffs jointly submit the following Statement of the Case in support of their request

26   for entry of default judgment against defendant, Brandon Michael McDowell:

27        1.  Plaintiffs, Matt Capelouto and Christine Capelouto are a married couple and the

28

                               1

biological parents of decedent, Alexandra ("Alex") Capelouto.

2. In December of 2019, Alex was in her sophomore year Arizona State University, with a major in Sociology.

3. On December 22, 2019, she was staying at her parent's home for her winter break from school. She was 20 years old.

4. She went on to the social media app Snapchat, and contacted the defendant, Brandon Michael McDowell, to purchase Percocet. The defendant came to the home to sell the Percocet to Alex. However, he sold her counterfeit pills that were manufactured with Fentanyl.

5. That evening, Alex took one of the pills and died from Fentanyl poisoning.

6. McDowell was prosecuted under a federal statute for Possession with Intent to Distribute Fentanyl. He pled guilty to the charges and is now in federal custody serving up to 9 years for Alex's death. Her mother, plaintiff Christine Capelouto, was diagnosed with stage 4 triple negative breast cancer, which has metastasized to her lungs. She attributes this condition to the depression and stress she has felt since Alex's death.

7. Alex's father, Matt Capelouto, has become the preeminent spokesperson for this issue, seeking to pass Alex's Law, which would require courts to issue a written admonishment to defendants convicted of a range of fentanyl-related offenses, from possessing for sale to sharing or transporting the drug.

8. The plaintiff's seek $4,000,000 in general damages plus $1,000,000 in punitive damages. We believe this civil judgment would send a message to other fentanyl peddlers as to the value of the lives lost by their callous actions and prompt them to give up the trade, possibly saving other parents from experiencing this hearbreak.

2

Dated:    November 19, 2023            LAW OFFICE OF ROBERT P. KARWIN

By: _____
        Robert P. Karwin
        *Attorneys for plaintiffs, Matt Capelouto and*
        *Christine Capelouto*

3

**EXHIBIT "4"**

Electronically Filed by Superior Court of California, County of Riverside on 11/28/2023 02:07 PM
Case Number CVSW2109985 0000076830058 - Jason B. Galkin, Executive Officer/Clerk of the Court By Dawn Brown, Clerk

LAW OFFICE OF
ROBERT P. KARWIN
29800 Bradley Rd., Suite 103
Menifee, CA  92586
Telephone:  (951) 246-4514
Facsimile:  (951) 246-8174
Email: rkarwin@karwinlaw.com

ROBERT P. KARWIN, ESQ. .  SBN 190573

TRUJILLO & TRUJILLO
41593 Winchester Rd., Suite 201
Temecula, CA 92590
Telephone: (951)296-9529
Facsimile: (951)296-9533
Email: trulaw@trujillo-law.us

MELODY A. TRUJILLO – SBN 165218

Attorneys for plaintiffs, Matt Capelouto
and Christine Capelouto

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| Matt Capelouto and Christine Capelouto | Case No.  CVSW2109985 |
| Plaintiffs, | |
| vs. | DECLARATION OF MATT CAPELOUTO IN SUPPORT OF REQUEST FOR ENTRY OF DEFAULT JUDGMENT |
| Brandon Michael McDowell, Justin Lee McDowell, Jill McCarthy, and DOES 1-50, INCLUSIVE, | |
| Defendants. | |

I, Matt Capelouto, declare as follows:

1. I am the plaintiff in the above-captioned matter.

1

LAW OFFICE OF
ROBERT P.
KARWIN

2. I am personally familiar with the facts stated herein and could competently testify thereto should I be called upon to do so.

3. My wife, Christine Capelouto, and I are the biological parents of Alexandra Capelouto.

4. Alexandra was born February 24, 1999.

5. In December of 2019, she was in her sophomore year Arizona State University, with a major in Sociology. Attached hereto as Exhibit 1 is a photo of myself with Alex in her ASU dorm.

6. After graduation, her plan was to become a social worker so that she could help others.

7. On December 22, 2019, she was staying at our family home for her winter break from school. She was 20 years old.

8. Alexandra went on Snapchat and contacted an individual named Brandon McDowell in order to purchase the painkiller "Percocet" from McDowell. McDowell agreed to sell Percocet pills to Alexandra. He drove to my house and sold Alexandra some pills.

9. The pills were not Percocet as Alexandra thought. They were counterfeit pills manufactured with the deadly opioid fentanyl.

10. That evening, Alexandra ingested half of one of the pills. The fentanyl in the pill was a deadly dose. She died that evening as a result of the fentanyl poisoning.

11. Brandon McDowell was charged in federal court with a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(c) – Possession with Intent to Distribute Fentanyl.

12. On July 1, 2022, McDowell pled guilty to the charges and was sentenced to 8 years in federal prison. I have attached a true and correct copy of his signed plea as Exhibit 2 to this declaration.

13. As part of the plea, McDowell specifically admits that knowingly intended to sell fentanyl to our daughter.  (See Exhibit 2 – 6:11-7:23).

2

14. I will never say my daughter died of a drug overdose. She was deceived to death.

15. Since Alexandra's death, my wife and I have dedicated our lives to trying to prevent any other parents from experiencing the absolute devastation and anguish that comes with losing a child this way.

16. I serve as president of the non-profit druginducedhomicide.org and have worked tirelessly with legislators attempting to pass Alexandra's law, which would require courts to issue a written admonishment to defendants convicted of a range of fentanyl-related offenses, from possessing for sale to sharing or transporting the drug. This would alert the defendant that selling or giving away drugs could result in death, and that, if they do it again and somebody dies as a result, they could be on the hook for murder.

17. In March of 2022, my wife, Christine, was diagnosed with stage 4 triple negative breast cancer, which has metastasized to her lungs. I have no doubt that the grief of losing our daughter caused stress and strain on her body that brought on the cancer. I am now facing the possibility of losing my wife as a direct result of the death of our daughter. Attached hereto as Exhibit 3 is a photo of Christine with Alex. Their smiles reflect the bond they shared.

18. The intentional and despicable acts of Brandon McDowell have utterly destroyed our lives and have taken a tremendous toll on our family.

19. Alex's three siblings, Skye (age 22) and Brooke (age 32) and Brittany (age 33) have also been permanently impacted by this profound loss to our family. Exhibit 4, attached hereto, is a photo of Alex with her sisters.

20. If there is anything I would wish for today, it would be to hear Alex's voice. Since the day she was born, the sound of her voice filled our hearts and lives with love and hope.

3

21. Exhibit 5 attached hereto is the last photo Christine and I have, together, with Alex.

22. Counterfeit pills manufactured with Fentanyl in place of the expected ingredients pose one of the faster growing dangers facing our society. In our case, McDowell engaged in that crime knowingly and intentionally. Because of his callous disregard we will miss out on attending Alex's graduation and sharing the milestones of our lives together.

23. We are seeking an award that will reflect our loss while, at the same time, sends a message to others who engage in this nefarious activity.

24. Based on the foregoing, my wife Christine and I seek a joint award of $5,025,000.00 against Brandon McDowell for his intentional acts that took our beloved Alex from us.


I declare the foregoing to be true and correct under penalty of perjury pursuant to the laws of the state of California.

Executed this 17th day of November at Temecula, California.


Date: 11/17/2023          By: *Matt Capelouto*

Matt Capelouto, plaintiff/declarant

4

# Exhibit 1



# Exhibit 2

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEPHEN T. MERRILL (Cal. Bar No. 255827)
Special Assistant United States Attorney
JOHN A. BALLA (Cal. Bar No. 295474)
Assistant United States Attorney
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6267
    Facsimile: (951) 276-6202
    E-mail:    Stephen.Merrill@usdoj.gov
              John.Balla@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

07/11/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>                v.<br><br>BRANDON MICHAEL MCDOWELL,<br>  aka "trvpkid_69,"<br><br>        Defendant. | No. ED CR 21-238-JGB<br><br>PLEA AGREEMENT FOR DEFENDANT<br>BRANDON MICHAEL MCDOWELL |

    1.    This constitutes the plea agreement between Brandon Michael
McDowell ("defendant") and the United States Attorney's Office for
the Central District of California (the "USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

1    a. Give up the right to indictment by a grand jury and,

2 at the earliest opportunity requested by the USAO and provided by the

3 Court, appear and plead guilty to a one-count information in the form

4 attached to this agreement as Exhibit A or a substantially similar

5 form, which charges defendant with Possession with Intent to

6 Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1),

7 (b)(1)(C).

8    b. Not contest facts agreed to in this agreement.

9    c. Abide by all agreements regarding sentencing contained

10 in this agreement.

11    d. Appear for all court appearances, surrender as ordered

12 for service of sentence, obey all conditions of any bond, and obey

13 any other ongoing court order in this matter.

14    e. Not commit any crime; however, offenses that would be

15 excluded for sentencing purposes under United States Sentencing

16 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

17 within the scope of this agreement.

18    f. Be truthful at all times with the United States

19 Probation and Pretrial Services Office and the Court.

20    g. Pay the applicable special assessment at or before the

21 time of sentencing unless defendant has demonstrated a lack of

22 ability to pay such assessments.

23    h. Defendant agrees that any and all criminal debt

24 ordered by the Court will be due in full and immediately.  The

25 government is not precluded from pursuing, in excess of any payment

26 schedule set by the Court, any and all available remedies by which to

27 satisfy defendant's payment of the full financial obligation,

28 including referral to the Treasury Offset Program.

2

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

3

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4. Defendant understands that for defendant to be guilty of the crime charged in the superseding information, that is, Possession with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), the following must be true:

      a. First, defendant knowingly possessed fentanyl;

      b. Second, defendant knew that it was fentanyl or some other federally controlled substance; and

      c. Third, defendant intended to distribute it to another person.

<u>PENALTIES AND RESTITUTION</u>

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), is: 20 years' imprisonment; a lifetime period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), is: a 3-year period of supervised release in addition to any term of imprisonment, and a mandatory special assessment of $100.

7.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a

5

1   federal crime for a convicted felon to possess a firearm or

2   ammunition.  Defendant understands that the conviction in this case

3   may also subject defendant to various other collateral consequences,

4   including but not limited to revocation of probation, parole, or

5   supervised release in another case and suspension or revocation of a

6   professional license.  Defendant understands that unanticipated

7   collateral consequences will not serve as grounds to withdraw

8   defendant's guilty plea.

9       10.  Defendant and his counsel have discussed the fact that, and

10  defendant understands that, if defendant is not a United States

11  citizen, the conviction in this case makes it practically inevitable

12  and a virtual certainty that defendant will be removed or deported

13  from the United States.  Defendant may also be denied United States

14  citizenship and admission to the United States in the future.

15  Defendant understands that while there may be arguments that

16  defendant can raise in immigration proceedings to avoid or delay

17  removal, removal is presumptively mandatory and a virtual certainty

18  in this case.  Defendant further understands that removal and

19  immigration consequences are the subject of a separate proceeding and

20  that no one, including his attorney or the Court, can predict to an

21  absolute certainty the effect of his conviction on his immigration

22  status.  Defendant nevertheless affirms that he wants to plead guilty

23  regardless of any immigration consequences that his plea may entail,

24  even if the consequence is automatic removal from the United States.

25                          FACTUAL BASIS

26      11.  Defendant admits that defendant is, in fact, guilty of the

27  offense to which defendant is agreeing to plead guilty.  Defendant

28  and the USAO agree to the statement of facts provided below and agree

6

that this statement of facts is sufficient to support a plea of
guilty to the charge described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 13 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

On December 22, 2019, in Riverside County within the Central
District of California, defendant possessed fentanyl with intent to
distribute it to another.  He in fact distributed the fentanyl to
Alexandra Capelouto, the use of which resulted in Alexandra's death
on or about December 23, 2019.

Specifically, on the night of December 22, 2019, Alexandra
Capelouto asked defendant if he could sell her Percocet pills, a
prescription painkiller.  Defendant agreed to sell Alexandra Percocet
pills.  Defendant drove to Alexandra's home in Temecula, California,
and sold her what turned out to be approximately 11 counterfeit
oxycodone pills that he later described to law enforcement as blue
"Oxys" or "M30s."  Defendant knew it was illegal for him to sell the
pills and that they contained fentanyl or some other federally
controlled substance.  Upon going to bed the night of December 22,
2019, Alexandra Capelouto ingested half of one of the pills.  The
fentanyl entered her system, poisoning her body, and caused her
death.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of

conviction.

13.  Defendant and the USAO agree to the following applicable

Sentencing Guidelines factors:

Base Offense Level:              38       U.S.S.G. § 2D1.1(a)(2)

Defendant and the USAO reserve the right to argue that additional

specific offense characteristics, adjustments, and departures under

the Sentencing Guidelines are appropriate.

14.  Pursuant to U.S.S.G. §§ 1B1.2(a) and (c), the parties

stipulate that the defendant committed a separate violation of 21

U.S.C. § 841(b)(1)(C) (distribution of controlled substances

resulting in death), in that, on or about December 22, 2019, the

defendant knowingly and intentionally distributed fentanyl, the use

of which resulted in the death of A.C., and that such overdose death

resulting from the defendant's distribution of fentanyl constitutes a

more serious offense than the offense of conviction for purposes of

calculating the applicable Sentencing Guidelines offense level.

Accordingly, pursuant to U.S.S.G. §§ 2D1.1(a)(2), 1B1.2(a) and

1B1.2(c), the parties stipulate that the Court should calculate the

Sentencing Guidelines as if defendant had been convicted of the

offense described in this paragraph and apply a base offense level

38.  The parties further stipulate that application of such a base

1   offense level, which is greater than the base offense level that

2   would otherwise apply, is independently supported by U.S.S.G. §

3   5K2.1.  Defendant will not recommend, argue, or otherwise suggest

4   that the court impose a base offense level other than 38.

5       15.  Defendant understands that there is no agreement as to

6   defendant's criminal history or criminal history category.

7       16.  Defendant and the USAO reserve the right to argue for a

8   sentence outside the sentencing range established by the Sentencing

9   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

10   (a)(2), (a)(3), (a)(6), and (a)(7).

11   <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

12       17.  Defendant understands that by pleading guilty, defendant

13   gives up the following rights:

14          a.  The right to persist in a plea of not guilty.

15          b.  The right to a speedy and public trial by jury.

16          c.  The right to be represented by counsel -- and if

17   necessary have the Court appoint counsel -- at trial.  Defendant

18   understands, however, that, defendant retains the right to be

19   represented by counsel -- and if necessary have the Court appoint

20   counsel -- at every other stage of the proceeding.

21          d.  The right to be presumed innocent and to have the

22   burden of proof placed on the government to prove defendant guilty

23   beyond a reasonable doubt.

24          e.  The right to confront and cross-examine witnesses

25   against defendant.

26          f.  The right to testify and to present evidence in

27   opposition to the charges, including the right to compel the

28   attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

       h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

19.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 210 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or

supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 168 months, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

       a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

       b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

12

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

      c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

    25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

    26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          7/8/2022
STEPHEN T. MERRILL                    _____
Special Assistant U.S. Attorney        Date
JOHN A. BALLA
Assistant United States Attorney

_____          7/1/22
BRANDON MICHAEL MCDOWELL               _____
Defendant                              Date

_____          7/1/22
ANDREW BYRD                            _____
Deputy Federal Public Defender         Date
Attorney for Defendant
BRANDON MICHAEL MCDOWELL

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be

15

1   filed, of possible defenses that might be asserted either prior to or

2   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

3   of relevant Sentencing Guidelines provisions, and of the consequences

4   of entering into this agreement.  No promises, inducements, or

5   representations of any kind have been made to me other than those

6   contained in this agreement.  No one has threatened or forced me in

7   any way to enter into this agreement.  I am satisfied with the

8   representation of my attorney in this matter, and I am pleading

9   guilty because I am guilty of the charge and wish to take advantage

10  of the promises set forth in this agreement, and not for any other

11  reason.

12

13  _____          7/1/22
    BRANDON MICHAEL MCDOWELL                  Date
14  Defendant

15

16                  CERTIFICATION OF DEFENDANT'S ATTORNEY

17      I am Brandon Michael McDowell's attorney.  I have carefully and

18  thoroughly discussed every part of this agreement with my client.

19  Further, I have fully advised my client of his rights, of possible

20  pretrial motions that might be filed, of possible defenses that might

21  be asserted either prior to or at trial, of the sentencing factors

22  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

23  provisions, and of the consequences of entering into this agreement.

24  To my knowledge: no promises, inducements, or representations of any

25  kind have been made to my client other than those contained in this

26  agreement; no one has threatened or forced my client in any way to

27  enter into this agreement; my client's decision to enter into this

28  agreement is an informed and voluntary one; and the factual basis set

                                 16

1  forth in this agreement is sufficient to support my client's entry of

2  a guilty plea pursuant to this agreement.

3  _____        _____7/1/22_____

4  ANDREW BYRD                               Date
   Deputy Federal Public Defender
5  Attorney for Defendant
   BRANDON MICHAEL MCDOWELL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,            ED CR No. 21-238(A)-JGB

11            Plaintiff,                  S U P E R S E D I N G
                                          I N F O R M A T I O N
12            v.
                                          [21 U.S.C. §§ 841(a)(1),
13   BRANDON MICHAEL MCDOWELL,            (b)(1)(C): Possession with Intent
        aka "trvpkid_69,"                 to Distribute Fentanyl]
14
              Defendant.
15

16

17        The United States Attorney charges:

18                [21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

19        On or about December 22, 2019, in Riverside County, within the

20   Central District of California, defendant BRANDON MICHAEL MCDOWELL,

21   also known as "trvpkid_69," knowingly and intentionally possessed

22   ///

23   ///

24

25

26

27

28

1  with intent to distribute fentanyl, a Schedule II narcotic drug

2  controlled substance.

3

4                                    TRACY L. WILKISON
                                     United States Attorney
5

6

7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    JERRY C. YANG
                                     Assistant United States Attorney
10                                   Chief, Riverside Branch Office

11                                   STEPHEN T. MERILL
                                     Special Assistant U.S. Attorney
12                                   JOHN A. BALLA
                                     Assistant United States Attorney
13                                   Riverside Branch Office

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **PLEA AGREEMENT FOR DEFENDANT BRANDON MICHAEL MCDOWELL**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows:
   **SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **July 11, 2022**, in Riverside, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
Stephanie Ascencio
Legal Assistant

1                        **ATTACHMENT**

2   Andrew Byrd **-** DFPD
    Federal Public Defenders Office
3   3801 University Avenue, Suite 700
    Riverside, CA 92501
4   andrew_byrd@fd.org

5   Young J. Kim - DFPD
    Federal Public Defenders Office
6   3801 University Avenue Suite 700
    Riverside, CA 92501
7   Young_Kim@fd.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3



# Exhibit 4



# Exhibit 5



**EXHIBIT "5"**

JUD-100

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Robert P. Karwin, Esq., 190573
The Law Office of Robert P. Karwin
29800 Bradley Rd. Ste 103 Menifee, CA 92586
TELEPHONE NO.: (951)246-4514     FAX NO. *(Optional):* (951)346-3684
E-MAIL ADDRESS *(Optional):* rkarwin@karwinlaw.com
ATTORNEY FOR *(Name):* Christine Capelouto

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Riverside
STREET ADDRESS: 30755-D Auld Road
MAILING ADDRESS: 30755-D Auld Road
CITY AND ZIP CODE: Murrieta, 92563
BRANCH NAME: Southwest Justice Center - Murrieta

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 21 2023

M. Criel

4AT

DEC 22 2023

R

PLAINTIFF: Matt Capelouto, Christine Capelouto

DEFENDANT: Brandon McDowell

**JUDGMENT**

| | | |
|---|---|---|
| ☐ By Clerk | ☒ By Default | ☐ After Court Trial |
| ☒ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial |

CASE NUMBER:
CVSW2109985

**JUDGMENT**

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
   before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*          ☐ Plaintiff's attorney *(name each):*
         (1)                                (1)
         (2)                                (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*          ☐ Defendant 's attorney *(name each):*
         (1)                                (1)
         (2)                                (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☒ A statement of decision (Code Civ. Proc., § 632) ☒ was not ☐ was   requested.

AÁP

DEC 08 2023

R

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Code of Civil Procedure, §§ 585, 664.6

Electronically RECEIVED by Superior Court of California, County of Riverside on 12/06/2023 02:10 PM - Jason B. Galkin, Executive Officer/Clerk of the Court By Dawn Brown, Clerk

| PLAINTIFF: Matt Capelouto | CASE NUMBER: |
|---|---|
| DEFENDANT: Brandon McDowell | CVSW2109985 |

JUDGMENT IS ENTERED AS FOLLOWS BY:  [X] THE COURT    [ ] THE CLERK

4. [ ]    **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff (name each):
Matt Capelouto
Christine Capelouto
and against defendant (names):
Brandon Michael McDowell

[ ]  Continued on Attachment 5a.

b. [ ]  for defendant (name each):

c. [ ] for cross-complainant (name each):

and against cross-defendant (name each):

[ ]  Continued on Attachment 5c.

d. [ ]  for cross-defendant (name each):

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

c. [ ]  Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) | [X] | Damages | $ | 5,025,000 |
|---|---|---|---|---|
| (2) | [ ] | Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [X] | Costs | $ | 735 |
| (5) | [ ] | Other (specify): | $ | |
| (6) | | **TOTAL** | $ | 5025735 |

| (1) | [ ] | Damages | $ | |
|---|---|---|---|---|
| (2) | [ ] | Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other (specify): | $ | |
| (6) | | **TOTAL** | $ | 0 |

b. [ ]  Plaintiff to receive nothing from defendant named in item 5b.
[ ]  Defendant named in item 5b to recover costs  $
[ ]  and attorney fees  $

d. [ ]  Cross-complainant to receive nothing from cross-defendant named in item 5d.
[ ]  Cross-defendant named in item 5d to recover costs  $
[ ]  and attorney fees  $

7. [X] Other (specify):    **See attachment 7**

Date:  12/19/23

[ ]  _____  JUDICIAL OFFICER  CHAD W. FIRETAG

Date:    [ ]  Clerk, by_____, Deputy

(SEAL)

**CLERK'S CERTIFICATE** (Optional)

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by  _____, Deputy

Page 2 of 2

JUD-100 [New January 1, 2002]    **JUDGMENT**

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Capelouto v. McDowell | CVSW2109985 |

**ATTACHMENT** *(Number):* 7

*(This Attachment may be used with any Judicial Council form.)*

Defendant Brandon Michael McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, was intentional, done without just cause or excuse, wilful and malicious, and was done with the specific intent to cause serious harm and injury to plaintiffs' decdent, Alexandra Capelouto, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 3   of 3

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

*www.courtinfo.ca.gov*

**EXHIBIT "6"**

Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
   A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501     Fax (323) 937-4503
e-mail: baruchcohen@baruchcohenesq.com

Charles Shamash, Esq. (SBN 178110)
**CACERES & SHAMASH, LLP**
9701 Wilshire Boulevard, 10th Floor
Beverly Hills, CA 90212
(310) 205-3400    Fax: (310) 878-8308
e-mail: cs@locs.com

*Attorneys For Plaintiffs, Matt Capelouto and Christine Capelouto*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:22-bk-14752-MH |
| BRANDON MICHAEL MCDOWELL, aka "trvpkid_69,", | Assigned to the Honorable Mark D. Houle |
| Debtor | Chapter 7 |
| MATT CAPELOUTO AND CHRISTINE CAPELOUTO, | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(6) & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)** |
| Plaintiffs | |
| vs. | |
| BRANDON MICHAEL MCDOWELL, aka "trvpkid_69," | |
| Defendant | |

**TO THE HONORABLE JUDGE MARK D. HOULE, UNITED STATES**

**BANKRUPTCY COURT JUDGE::**

    Matt & Christine Capelouto ("Capelouto") by and through their respective counsel,

complain and allege as follows:

5/11-8:28pm

**CORE/NON-CORE DESIGNATION**

1.   In accordance with Local Bankruptcy Rule 7008-1, Capelouto alleges that this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). Capelouto acknowledges that the Court has the power to enter final orders and judgments in this matter. The Capelouto's also consents to the Court's entry of final orders and judgments in this matter.

**JURISDICTION AND VENUE**

2.   Defendant and Debtor Brandon Michael McDowell ("Debtor" and/or "McDowell") filed a voluntary chapter 7 petition for relief under Title 11 of the United States Code on 12-21-2022 (the "Petition Date") , Case # 6:22-bk-14752-MH (the "Petition") in the United States Bankruptcy Court, Central District of California, Riverside Division (the "Bankruptcy Court") commencing the instant bankruptcy case. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

3.   The venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**PARTIES**

4.   The following is a description of the relevant parties involved in the facts forming the basis of this Complaint.

5.   The Capelouto's are the bereaved parents of their 20-year old daughter Alexandra Capelouto ("Alexandra").

6.   The Capelouto's are informed and believe that McDowell is a 23-year old individual residing in Los Angeles, California, currently incarcerated in prison at FCI Terminal Island, 1299 Seaside Avenue, San Pedro, California 90731, prisoner # 79243-509. McDowell is represented by Summer M Shaw of Shaw & Hanover, PC.

**GENERAL ALLEGATIONS**

7.   The following general allegations form the background for the Capelouto's claims for relief against McDowell.

8.   The Capelouto's are informed and believe that on or about 12-22-2019, McDowell resided and operated a business out of 11434 Millard Dr., Riverside, California 92503 comprised

5/11-8:28pm
-2-

1  of manufacturing, distribution, and sales of narcotics including, but not limited to

2  oxycontin and fentanyl.

3  9.   The Capelouto's are informed and believe that on or about 12-22-2019, McDowell was

4  contacted via Snapchat by Alexandra, who inquired about purchasing Percocet pills, a

5  prescription painkiller.

6  10.  The Capelouto's are informed and believe that McDowell agreed to sell Alexandra

7  Percocet/Oxycontin pills.

8  11.  The Capelouto's are informed and believe that McDowell sold 11 pills to Alexandra that

9  he represented to be the pure Percocet/Oxycontin Alexandra requested, that he later

10  described to law enforcement as blue "Oxys" or "M30s." However, the pills were not pure

11  Percocet/Oxycontin. Each pill actually contained a lethal dose of fentanyl.[1]

12  12.  The Capelouto's are informed and believe that the pills were manufactured using fentanyl

13  as either a filler or total replacement for Percocet/Oxycontin in order to defraud purchasers

14  and create a higher profit margin for the seller, distributor, and manufacturer of the pills.

15  They were manufactured to look identical to pure oxycontin pills so that the alterations

16  were undetectable by the purchaser or user.

17  13.  The Capelouto's are informed and believe that McDowell knew that it was illegal for him

18  _____

19  [1]According to the CDC, there were 70,601 overdose deaths involving synthetic opioids other
than methadone (primarily fentanyl) in the United States in 2021. This represents a 23.3% increase

20  from the previous year. Fentanyl is a powerful synthetic opioid that is 50 to 100 times more potent
than morphine. It is often mixed with other drugs, such as heroin, cocaine, and methamphetamine,

21  and can be deadly even in small doses. Fentanyl works by binding to opioid receptors in the brain and
spinal cord. This binding slows down the body's respiratory system, which can lead to respiratory

22  arrest and death. Because of fentanyl's extreme potency, the risk of overdose death is great,
particularly when the user is inexperienced or unaware of what substance he or she is using. See, e.g.

23  *United States v. Harris*, 774 Fed. Appx. 937, 941 (6th Cir. 2019) (quoting the Sentencing
Commission's finding. The rise in fentanyl-related deaths is a major public health crisis in the United

24  States. Here is the national death toll for deaths by fentanyl for the years 2019-2023:

25  

| Year | Number of deaths |
|------|------------------|
| 2019 | 50,100 |
| 2020 | 69,710 |
| 2021 | 70,601 |
| 2022 | 106,699 (provisional) |
| 2023 | 110,000 (estimated) |

26  

27  

28  

5/11-8:28pm                        -3-

to sell the pills (to Alexandra) and that they contained fentanyl or some other federally

controlled substance.

14. The Capelouto's are informed and believe that prior to 12-22-2029, McDowell knew that

ingestion of Fentanyl was dangerous.

15. The Capelouto's are informed and believe that prior to 12-22-2029, McDowell knew that

ingestion of Fentanyl could cause death in humans.

16. The Capelouto's are informed and believe that on 12-22-20219, McDowell knew that

ingestion of Fentanyl could cause death to Alexandra.

17. The Capelouto's are informed and believe that on 12-22-20219, McDowell had not taken

any steps to mitigate the risk of harm, such as providing warnings to Alexandra about the

dangers of Fentanyl. In fact, it is much worse, as McDowell lied to Alexandra that the pills

were Percocet/Oxycontin and withheld the truth from her that the pills were Fentanyl.

18. The Capelouto's are informed and believe that upon going to bed the night of 12-22-2019,

Alexandra ingested half of one of the pills. The Fentanyl entered her system, poisoning her

body, and caused her death.

19. The Capelouto's are informed and believe that McDowell intentionally, misrepresented the

content of the pills he sold to Alexandra such that she was not able to manage the quantity

and nature of material she was about to ingest. That same evening, Alexandra did, in fact,

consume one or more of the pills she purchased from McDowell.

20. The Capelouto's are informed and believe that the following day, on or about 12-23-2019,

Alexandra was found unresponsive by her parents. She was ultimately pronounced dead

with the cause of death being a lethal dose of fentanyl, traced to the pills she purchased

from McDowell on or about 12-22-2019.

21. In *United States of America v. Brandon Michael Mcdowell*, aka "trvpkid_69," # ED CR

21-238-JGB, on 7-11-2022, McDowell signed a *Plea Agreement*, with the United States

Attorney's Office for the Central District of California, where he pled guilty of the crime

of Possession with Intent to Distribute Fentanyl, in violation of 21 USC §§

1    841(a)(1)(b)(1)(c) [Doc-32].[2]

2    22.    McDowell's *Plea Agreement* admitted that he: (1) knowingly and intentionally possessed

3    fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and

4    intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by

5    overdose. McDowell also acknowledged that he will be required to pay full restitution to

6    the victim(s) of the offense to which defendant is pleading guilty.

7    23.    McDowell's *Plea Agreement*, agreed that: any statements made by him, under oath, at the

8    guilty plea hearing, and evidence derived from such statements, shall be admissible against

9    him in any such action against him, and he waived and gave up any claim under the United

10    States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of

11    the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or

12    any evidence derived from the statements should be suppressed or are inadmissible.

13    24.    On 11-30-2022, the Capeloutos sued McDowell in the Superior Court of the State of

14    California, Riverside County, # CVSW219985 (the "State Court Case"), pursuant to the

15    Drug Dealer Liability Act "DDLA" codified as Health and Safety Code sections 11700, et

16    seq, for the wrongful death of Alexandra, who on 12-22-2019, McDowell illegally sold

17    Percocet and/or Oxycontin pills (blue "Oxys" or "M30s") containing lethal doses of

18    fentanyl, which caused her death.

19    25.    The Capelouto's are informed and believe that McDowell's selling harmful narcotics such

20    as fentanyl, particularly under the false premise that they were prescription painkillers,

21    was both extreme and outrageous, were intentional, done without just cause or excuse,

22    wilful and malicious, and was done with the specific intent to cause serious harm and

23    injury to Alexandra, and/or was a categorically harmful activity, and that harm was

24    substantially certain to occur as a result of his actions.

25    _____

26    [2]21 USC §§ 841(a)(1)(b)(1)(C) provides that any person who knowingly or intentionally
distributes, or possesses with intent to distribute, a Schedule III, IV, or V controlled substance, as
27    defined in the Controlled Substances Act, shall be punished by imprisonment for up to five years, a
fine, or both.

28

26. The Capelouto's are informed and believe that the conduct of McDowell did in fact, directly and proximately, cause Alexandra serious mental and physical distress, which resulted in her untimely death.

27. The Capelouto's are informed and believe that as a legal, direct and proximate result of the conduct of McDowell, Alexandra and her parents suffered damages. Per the *Statement of Damages* filed in the State Court Case (the "Statement of Damages"), in the amount is $5,000,000.00.

28. The Capeloutos have gone through enough hell as a result of McDowell's illegal actions. They must now live a painful life of bereavement without their daughter. To quote Matt Capelouto's gut-wrenching *Victim Impact Statement*:

*Alex's murder has taken even more from us.*

*Losing her child - the strain and unbearable stress that was put upon my beautiful wife by the defendant and his greed …*

*Look, we all know, there's no greater pain than having a child stolen from you - it puts a weight and strain on a soul that can't be measured.*

*But I believe all this pain and despair is the cause of my wife's cancer, which is literally killing her as I stand here and talk with you.*

*With no history of cancer in her family, this deadly disease creeped into our family's lives - just like this murderer did - and eventually, it will take her away from me as well.*

*And we will be the ones struggling to survive the chaotic, debilitating waves of destruction that he's left in his wake.*

*Stand beside us in our grief. Feel what we are feeling. Absorb a tiny piece of the pain we are enduring. A pain that is - to this day - ripping people I love more than anything away from me.*

## **FIRST CLAIM FOR RELIEF**
*(For Determination that McDowell's Debt to the Capeloutos is NonDischargeable Under 11 USC § 523(a)(6))*

29. The Capelouto's incorporate by reference and reallege each of the allegations set forth in paragraphs 1 through 28 as though set forth in full.

30. 11 USC § 523(a)(6), provides that a debt that arises from willful and malicious injury by the debtor to another entity or to the property of another entity in nondischargeable.

31. The Capelouto's are informed and believe that McDowell's selling harmful narcotics such as fentanyl, particularly under the false premise that they were prescription painkillers, was both extreme and outrageous, was intentional, done without just cause or excuse, wilful and malicious, and was done with the specific intent to cause serious harm and injury to Alexandra, and/or was a categorically harmful activity, and that harm was substantially certain to occur as a result of his actions.

32. McDowell's Plea Agreement admitted that he: (1) knowingly and intentionally possessed fentanyl; (2) knowingly and intentionally distributed fentanyl; (3) knowingly and intentionally distributed fentanyl to Alexandra - the use of which resulted in her death by overdose.

33. The Capelouto's are entitled to a judgment that the damages from the wrongful death of their daughter Alexandra are deemed to be nondischargeable under 11 USC § 523(a)(6).

**SECOND CLAIM FOR RELIEF**
*(For Denial of McDowell's Discharge Under 11 USC § 727(a))*

34. The Capelouto's incorporate by reference and reallege each of the allegations set forth in paragraphs 1 through 33 as though set forth in full.

35. 11 USC § 727(a)(4)(A), provides that a Debtor will be denied a discharge if he knowingly and fraudulently made a false oath or account regarding the Bankruptcy.

36. McDowell's Statement of Financial Information # 4 lists no income during 2022, and for the two previous calendar years 2021, and 2020 (the Petition Date was 12-21-2022).

37. The Capelouto's are informed and believe that McDowell earned substantial income selling drugs during this period of time with virtually no expenses since he lived at home with his parents, and therefore lied in his bankruptcy, and his discharge be denied.

38. McDowell's Schedule H lists no Co-Debtors, omitting his parents Justin Lee McDowell and Jill McCarthy who are co-defendants in the Capelouto's state court lawsuit.

39. The Capelouto's are entitled to a judgment that McDowell'sdischarge be denied under 11 USC § 727(a).

**PRAYER FOR RELIEF**

**WHEREFORE**, the Capelouto's pray for Judgment against McDowell as follows:

1.    That McDowell is indebted to the Capelouto's for actual damages in an amount not less than $5,000,000.00;

2.    That McDowell is indebted to the Capelouto's for attorneys' fees, expenses, and other costs and charges of collection accrued after the entry of judgment until their claim is paid in full;

3.    That the debt McDowell owes to the Capelouto's, and any and all other claims, debts and damages proven at trial, arising from or relating to the allegations herein are determined to be not dischargeable pursuant to 11 USC § 523(a)(6).

4.    That McDowell be denied a discharge pursuant to 11 USC § 727(a)(4)(A);

5.    For costs of suit; and

6.    For such other and further relief as the Court deems proper.

DATED:        May 11, 2023                        LAW OFFICE OF BARUCH C. COHEN
                                                 A Professional Law Corporation

                                                 By  /s/ Baruch C. Cohen
                                                 Baruch C. Cohen, Esq.
                                                 *Attorneys For Plaintiffs, Matt Capelouto and*
                                                 *Christine Capelouto*

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>MATT CAPELOUTO AND CHRISTINE CAPELOUTO | DEFENDANTS<br><br>BRANDON MICHAEL MCDOWELL, aka<br>"trvpkid_69" |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Baruch C. Cohen, Esq. (SBN 159455)    (323) 937-4501<br>LAW OFFICE OF BARUCH C. COHEN, A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(6) & FOR DENIAL OF DISCHARGE
PURSUANT TO 11 USC § 727(a)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
       actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
       (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
       if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 5,000,000.00 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> BRANDON MICHAEL MCDOWELL, aka "trvpkid_69" | BANKRUPTCY CASE NO.<br> 6:22-bk-14752-MH | |
| DISTRICT IN WHICH CASE IS PENDING<br> Central District of California | DIVISION OFFICE<br> Riverside | NAME OF JUDGE<br> Houle |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br> 5/11/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br> Baruch C. Cohen, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On 9/5/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen          bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
US Trustee (RS)         ustpregion16.rs.ecf@usdoj.gov
Robert Whitmore (TR)    rswtrustee@yahoo.com, rwhitmore@ecf.axosfs.com

☐  Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**  On 9/5/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Brandon Michael McDowell
Register No. 79243-509
FCI Terminal Island, Federal Correctional Institution
PO Box 3007
San Pedro CA 90733

☐  Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 9/5/2024,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via Personal Service:    Hon. Mark D. Houle, 3420 Twelfth St., Riverside, CA 92501
Via Email:               Robert P. Karwin, Esq., rkarwin@karwinlaw.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/5/2024 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|----------|-----------------------|---------------------|
| Date     | Printed Name          | Signature           |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.